T.C. Memo. 2013-80

UNITED STATES TAX COURT

JOHN THOMAS LONGINO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26146-09.                    Filed March 18, 2013.

John T. Longino, pro se.

<u>Brianna B. Taylor</u> and <u>Monica M. Osborn</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  On September 14, 2009, respondent (the IRS) issued

to petitioner John T. Longino a statutory notice of deficiency for tax year 2006.

The notice determined that Longino was liable for a deficiency in federal income

[*2] tax of $39,757 and a section-6662(a)[1] accuracy-related penalty of $7,951.40. On November 3, 2009, Longino timely filed a petition with the Tax Court disputing the determinations of the IRS.

After concessions, the issues remaining for decision are:

(1) whether Longino is entitled to dependency exemption deductions for three children not in his custody during tax year 2006;

(2) whether he is entitled to a child tax credit and an additional child tax credit with respect to those three children;

(3) whether he is entitled to a deduction for medical-and-dental expenses;

(4) whether he is entitled to a deduction for charitable contributions;

(5) whether he is entitled to a deduction for car-and-truck expenses;

(6) whether he is entitled to a deduction for certain expenses related to his law practice;

(7) whether he is entitled to a deduction for tuition and fees;

(8) whether he is entitled to a domestic-production-activities deduction;

(9) whether he is liable for the section-6662(a) accuracy-related penalty; and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]**  (10) whether certain payments from tax years other than 2006 reduce or eliminate his liability for penalties and interest for tax year 2006.

We have jurisdiction, pursuant to section 6214, to redetermine the deficiency and the penalty determined in the notice of deficiency.  See sec. 6214(a).

## FINDINGS OF FACT

Background

John T. Longino resided in Waleska, Georgia, at the time he filed the petition in this case.

Longino married Bettina Petereit in 1986.  Longino and Petereit have three children, F.L., J. L., and T.L.[2]  Longino also has two other children, John Longino, Jr., and Trevor Longino, from a previous marriage.

In 1999, Petereit--with assistance from Longino--formed the Longino Family Perpetual Trust I (trust).  Half of Longino and Petereit's joint assets were transferred into the trust at that time.  The primary beneficiaries of the trust are Longino and Petereit.  The secondary beneficiaries are Longino and Petereit's three children and Longino's two other children.  The trust is managed by the Alaskan Trustee (Alaskan Trustee), an Alaska corporation of which Longino's son

---

[2]The Court refers to minor children by their initials.  See Rule 27(a)(3).

**[*4]** Trevor is president. Longino handles the paperwork and various other administrative responsibilities for both the trust and the Alaskan Trustee.

In 2003 Longino and Petereit divorced. On February 13, 2006, an order was entered in Murray County Superior Court granting legal custody of F.L, J.L., and T.L. to Petereit. Although Longino continued to see the children, they remained in Petereit's custody from the date of the order through at least the end of 2006.

Longino is an attorney and has been practicing law for roughly 35 years. He is licensed to practice in Georgia as well as several other states. Since 1991 he has been a solo practitioner operating out of various home offices in Georgia. He drives frequently to meet with clients at their homes or offices.[3] During 2006 Longino used two vehicles, a 2005 PT Cruiser and a 2002 Chevrolet 3500 pickup truck, for business-related travel. He also owned a Honda Shadow motorcycle, which he used for personal travel. Longino claims that during 2006 he traveled 35,268 miles in the PT Cruiser and 9,003 miles in the pickup truck and that over 90% of that mileage was attributable to business travel. Longino did not maintain a mileage log or other contemporaneous records of his business travel. In lieu of such records, Longino presented at trial copies of his Outlook calendar along with

---

[3]The two successive home offices that Longino used in 2006 were a house in Chatsworth, Georgia, and an apartment in Canton, Georgia. The apartment in Canton had no meeting facilities.

[*5] directions generated by the website MapQuest. The MapQuest directions provided the distance between Longino's residences and various towns where he had appointments. However, as Longino conceded, the Outlook calendar was likely not a complete and accurate record of his business meetings during 2006. His appointments would often be moved or added without his noting the change on his calendar. On some of Longino's trips for business, he also ran personal errands.

Longino worked out of two different residences during 2006. From January through May 13, 2006, Longino lived in and worked out of a house in Chatsworth, Georgia. The first floor of the house, which constituted approximately 25% of the total area of the home, was a former "mother-in-law" suite that had been converted by Longino in 2000 to use as an office. The first floor had a separate entrance with an awning over the door. The first floor contained Longino's desk, files, and a table for meeting with clients. On May 13, 2006, he moved to an eight-room apartment in Canton, Georgia. One of the eight rooms, which Longino referred to as the "computer office room", was used in conjunction with Longino's law practice. Another room, which Longino referred to as the "sun room", was used for the storage of documents, records, and supplies.

[*6] During 2006 Longino was also involved in activities relating to a nonprofit venture, Port Tack Ministries. According to Longino, the purpose of Port Tack Ministries was to procure a sailboat and use it to provide relief to hurricane victims.[4] On February 10, 2007, a document titled "Articles of Association" for Port Tack Ministries was executed by Longino and his then fiancé, Leith Fitch. On April 27, 2007, the IRS issued to Port Tack Ministries an advance ruling letter which provisionally granted the organization tax-exempt status. The effective date of the advance ruling letter was February 10, 2007.

Longino claims that he made a $25,000 cash contribution to Port Tack Ministries on December 1, 2006. This date is over two months before the effective date of the advance ruling letter and the date when the organization's articles of association were executed. According to Longino, he effected the contribution by putting $25,000 in cash in an envelope and placing the envelope in a safe deposit box where he kept client files and other records relating to his legal practice.[5] Longino signed the following document, dated December 1, 2006:

---

[4]We need not determine whether we agree with Longino that the purpose of Port Tack Ministries was to provide relief to hurricane victims by sailboat. As explained infra p. 35, Longino's claimed deduction for his alleged contribution to Port Tack Ministries must be disallowed for lack of substantiation.

[5]We need not find whether Longino did effect the contribution. As discussed
(continued...)

[*7]   Received of John T. Longino the sum of $25,000.  Thank you!

/ signed /
John T. Longino

Port Tack Ministries
PO Box 310
Ellijay, GA 30540

Longino paid $4,421 in medical expenses related to in vitro fertilization (IVF) procedures undergone by Fitch, his former fiancé.  Longino had previously fathered at least five children by other women.  With respect to other remaining medical-and-dental expenses, Longino offered no evidence, testimonial or otherwise, regarding the nature of any illness or injury for which he or his dependents sought treatment, or the type of treatment provided.

Longino's son John Longino, Jr., attended Kennesaw State University during 2006.  Records show that someone paid a tuition-and-fee expense of $1,676 related to the son's attendance at the university during 2006.

Finally, Longino incurred expenses for grading and surveying work completed during 2006 on a property in Pickens County, Georgia.  The property was owned by PPP Properties Development, LLC, a Georgia limited liability

---

[5](...continued)
infra p. 35, a deduction for the alleged contribution is not permitted because Longino failed to properly substantiate the deduction.

[*8] company organized by Longino and controlled by the trust.[6]  During 2006 the property was subject to a conservation easement.  Therefore, no trees were harvested from the property as timber in that year.  Longino claims that the expenses he incurred with respect to the Pickens County property give rise to a domestic-production-activities deduction.

Longino's recordkeeping system for his business expenses was incomplete.  He did not maintain a separate bank account for his law practice.  He maintained two bank accounts:  one account at United Community Bank, which he used during the first part of the year, and one account at Bank of America, which he used for the second part of the year.  He used these bank accounts for both his law-practice expenses and his personal expenses.  He did not maintain a separate credit card for his law practice.  He maintained two credit cards:  a Chase Visa card and a Discover card.  He used both cards for both law-practice expenses and personal expenses.  He kept no receipts for the disputed expenses of his law practice.  He kept no other records that clearly distinguished the expenses of his law practice from his personal expenses.

---

[6]Longino offered conflicting testimony as to the ownership of PPP Properties Development, LLC.  At one point, he testified that the entity which owned the Pickens County property was wholly owned by the trust.  Later, he testified that the trust held only a 70% interest in PPP Properties Development, LLC.

**[*9]** Longino's personal expenses gave rise to entries on bank and credit-card statements that are not distinguishable from entries related to expenses incurred for his law practice. In addition to matters Longino handled for his clients, he managed paperwork for the trust and various related entities. In addition to handling lawsuits for clients, Longino was personally involved in several lawsuits with an ex-wife, an ongoing dispute with the Office of Child Support Services, and a criminal case that continued into 2006.

2006 Income-Tax Returns

On or about October 15, 2007, Longino filed a Form 1040, U.S. Individual Income Tax Return, for 2006 (original return). Although in prior years Longino had sought the assistance of an accountant in filing his tax returns, he prepared the original return himself, using Tax Cut software. He claimed as dependents four children: F.L., J.L., and T.L., who did not live with him for more than half of 2006 and who were in Petereit's custody for the greater portion of 2006, and John Longino, Jr., who apparently resided with Longino. He did not attach a signed Form 8332, Release of Claim to Exemption for Child of Divorced or Separated Parents, or any part of a divorce decree to the original return. He also claimed a child tax credit of $753 and an additional child tax credit of $2,247 relating to the three children not in his custody. On a Schedule A, Itemized Deductions, attached

**[*10]** to the original return, Longino reported medical-and-dental expenses of $8,526, home-mortgage interest paid of $8,374, and charitable contributions of $25,000. On a Schedule C, Profit or Loss from Business, attached to the original return, Longino claimed deductions for car-and-truck expenses of $38,627, expenses for business use of his home of $2,307, mortgage expenses of $8,374,[7] office expenses of $15,107, and "other expenses" of $27,930. These "other expenses" consisted of $17,823 in "client costs advanced", $2,666 in "law library" expenses, $2,079 for postage, $5,117 for telephone, and $245 for licenses. Finally, Longino claimed a $2,000 deduction for tuition and fees on line 35 of the return. Line 35 is a dual-purpose line item. It can be used by taxpayers to claim (1) a deduction for tuition and fees, (2) a deduction for domestic production activities, or (3) some combination of both deductions. I.R.S. Pub. 970, Tax Benefits for Education (2007). Preprinted on line 35 are the words "Domestic production activities deduction. Attach Form 8903". Form 8903, Domestic Production Activities Deduction, is a form for calculating the amount of the domestic-production-activities deduction claimed by the taxpayer. A taxpayer intending to claim a tuition-and-fees deduction on line 35 is supposed to write the

---

[7]This is the same amount of home-mortgage interest he claimed as a deduction on Schedule A.

**[*11]** letter "T" next to the amount of the deduction claimed.  Id.  Longino placed a "T" next to the $2,000 amount on line 35 of the original return.  Longino did not attach a Form 8903 or any similar documentation to his original return.  Longino's original return reported total tax due of $12,969.

On or about October 17, 2007, Longino submitted a self-prepared Form 1040X, Amended U.S. Individual Income Tax Return, for 2006 (first amended return).  On it, he claimed the same four children as dependents and again did not attach a signed Form 8332 or any portion of a divorce decree.  On the first amended return, he did not claim any amount as a child tax credit, but he claimed an additional child tax credit of $3,000.  On Schedule A of the first amended return, Longino reported medical-and-dental expenses of $8,604, home-mortgage interest paid of $8,374, and charitable contributions of $25,800.  On Schedule C of the first amended return, he claimed deductions for car-and-truck expenses of $38,627, expenses for business use of his home of $2,307, mortgage expenses of $8,374, office expenses of $15,107, and "other expenses" of $32,475.  These "other expenses" consisted of $22,368 in "client costs advanced", $2,666 for "law library", $2,079 for postage, $5,117 for telephone, and $245 for licenses.  Finally, he claimed a $1,651 tuition-and-fees deduction on line 35.  Longino placed a "T" next to the $1,651 amount on line 35.  Longino did not attach a Form 8903 or any

**[\*12]** similar documentation to his first amended return. Longino's first amended

return reported total tax due of $12,326.

On or about January 6, 2009, Longino submitted a second Form 1040X

(second amended return). The second amended return was prepared by a certified

public accountant (C.P.A.). On the second amended return, Longino claimed the

same four children as dependents and, again, failed to attach a signed Form 8332

or any portion of a divorce decree. He did not claim a child tax credit but claimed

an additional child tax credit of $3,000. On Schedule A of the second amended

return, he reported medical-and-dental expenses of $8,604, home-mortgage

interest paid of $8,374, and charitable contributions of $25,800. On Schedule C of

the second amended return, he claimed deductions for car-and-truck expenses of

$38,627, expenses for business use of his home of $2,307, office expenses of

$15,107, and "other expenses" of $32,475. These "other expenses" consisted of

$22,368 in "client costs advanced", $2,666 for "law library", $2,079 for postage,

$5,117 for telephone, and $245 for licenses. He did not claim a deduction for any

mortgage expenses on Schedule C of the second amended return. Longino also

claimed a $4,000 deduction on line 35 of the second amended return. Longino

placed a "T" next to the $4,000 deduction on line 35. Longino did not attach a

[*13] Form 8903 or any similar documentation to his second amended return.

Longino's second amended return reported total tax due of $12,175.

The table below summarizes the deductions, to the extent relevant here, that Longino claimed on his original and both of his amended returns:

| Type of deduction | Original return | First amended return | Second amended return |
|---|---|---|---|
| Home-mortgage interest (Schedule A)[1] | $8,374 | $8,374 | $8,374 |
| Home-mortgage interest (Schedule C)[2] | 8,374 | 8,374 | -0- |
| Child tax credit | 753 | -0- | -0- |
| Additional child tax credit | 2,247 | 3,000 | 3,000 |
| Medical and dental | 8,526 | 8,604 | 8,604 |
| Charitable contributions | 25,000 | 25,800 | 25,800 |
| Car and truck | 38,627 | 38,627 | 38,627 |
| Business use of home | 2,307 | 2,307 | 2,307 |
| Telephone | 5,117 | 5,117 | 5,117 |
| "Law Library" | 2,666 | 2,666 | 2,666 |
| Licenses | 245 | 245 | 245 |

| | | | |
|---|---|---|---|
| **[*14]** "Client costs advanced" | 17,823 | 22,368 | 22,368 |
| Postage | 2,079 | 2,079 | 2,079 |
| Office expenses | 15,107 | 15,107 | 15,107 |
| Line 35[3] | 2,000 | 1,651 | 4,000 |

[1]The IRS has conceded that Longino is entitled to an $8,374 Schedule-A deduction for home-mortgage interest.

[2]Longino has conceded that he is not entitled to a Schedule-C deduction home-mortgage interest.

[3]As noted before, on each Form 1040 Longino wrote a "T" next to line 35, which signifies that the amount written on line 35 corresponds to a deduction for tuition and fees. He did not attach a Form 8903 to any of the Forms 1040.

Notice of Deficiency

The IRS first contacted Longino concerning the examination of his 2006 income-tax return by letter dated March 16, 2009.

On September 14, 2009, the IRS issued to Longino a notice of deficiency for tax year 2006. The notice was issued with respect to the original return. In it, the IRS determined that Longino was liable for a deficiency in income tax of $39,757 and a section-6662(a) accuracy-related penalty of $7,951.40. The deficiency and penalty were based on the following determinations: (1) denial of dependency-exemption deductions attributable to the three children not in Longino's custody; (2) denial of a $753 child tax credit and a $2,247 additional child tax credit; (3) denial of a Schedule-A deduction for $8,526 in medical-and-

**[\*15]** dental expenses; (4) denial of an $8,374 Schedule-A deduction for home-mortgage interest; (5) denial of a $25,000 Schedule-A deduction for charitable contributions; (6) denial of a $38,627 Schedule-C deduction for car and truck expenses; (7) denial of an $8,374 Schedule-C deduction for mortgage expenses; (8) denial of a $2,307 Schedule-C deduction for business use of a home; (9) denial of a $15,107 Schedule-C deduction for office expenses; (10) denial of a $27,930 Schedule-C deduction for other expenses attributable to Longino's law practice;[8] (11) denial of a $2,000 deduction for tuition and fees; and (12) related computational adjustments.

On November 3, 2009, Longino timely petitioned the Court for redetermination of the determinations made in the notice of deficiency.[9]

At trial Longino conceded that he was not entitled to deduct $8,374 in home-mortgage interest expenses on Schedule C, and the IRS conceded that Longino was entitled to deduct $8,374 in home-mortgage interest on Schedule A. The other determinations contained in the notice of deficiency remain in dispute.

---

[8]This amount comprised expenses in the following categories: telephone, "law library", licenses, "client costs advanced", postage, and office expenses.

[9]In the petition, Longino did not claim that he was entitled to a deduction for domestic production activities.

**[\*16]** <u>Payments and Refunds Relating to Tax Years Subsequent to 2006</u>

On or about October 15, 2008, Longino submitted to the IRS a check for $5,000. There was no notation in the "Memo" line of this check. In a letter dated October 15, 2008, Longino requested that the IRS apply this $5,000 payment to his income-tax liability for tax year 2007. Account transcripts for Longino's 2007 tax year reflect that a $5,000 payment was credited to his account for 2007 on October 17, 2008. We infer that the $5,000 payment credited to Longino's account on October 17, 2008, was the $5,000 payment submitted on October 15, 2008.

In February 2011 the IRS refunded to Longino the $5,000, along with $326.35 of accrued interest. Account transcripts show that at the time the refund was issued Longino's 2007 account showed no balance due. Longino did not cash the refund check. He returned the refund check to the IRS with a letter dated February 17, 2011, requesting that the IRS credit the refunded amount to his income-tax account for tax year 2006. At trial IRS counsel acknowledged that the IRS had received both the check and Longino's request with respect to its application. She also stated that the IRS was in the process of applying the refunded money (i.e. the $5,000 and the $326.35 of interest) to Longino's income-tax account for 2006.

[*17] Beginning in tax year 2006, Longino remitted payments to the IRS in excess of the tax he reported due on his returns. On his Forms 1040, he elected to apply the amounts he calculated as overpayments against his tax liability for the next year. For example, on his original return for 2006 Longino calculated that he had an overpayment for that year of $15,685 and requested that it be applied against his 2007 income-tax liability. Account transcripts indicate that he made such elections through at least tax year 2010.

## OPINION

### I.    Procedural Issues and Burden of Proof

As a preliminary matter, Longino asserts that the notice of deficiency is invalid or, if valid, not entitled to an initial presumption of correctness. He also asserts that the burden of proof should be shifted to the IRS pursuant to section 7491.

#### A.    Validity of Notice of Deficiency

Longino contends that the notice of deficiency is "fatally defective" because of errors committed by the IRS. First, he argues that the notice is invalid because it was issued for an improper purpose. According to Longino, it was issued because he failed to attend a meeting with an IRS employee. He alleges that, although he was never informed of any meeting, an IRS employee incorrectly

**[\*18]** marked him as a "no show" and that this notation precipitated the issuing of the notice of deficiency.

In order to be valid, a notice of deficiency must advise the taxpayer that the IRS has determined a deficiency, and it must provide the amount of the deficiency and the tax year at issue. Campbell v. Commissioner, 90 T.C. 110, 115 (1988); see also Bokum v. Commissioner, 992 F.2d 1136, 1139 (11th Cir. 1993), aff'g T.C. Memo. 1990-21. It need not take any particular form and it need not explain how the deficiency was determined. Scar v. Commissioner, 814 F.2d 1363, 1367 (9th Cir. 1987), rev'g 81 T.C. 855 (1983). A notice may be found invalid where it is evident from the face of the notice that the IRS failed to make a determination with respect to the taxpayer to whom the notice was issued. See id.

When a notice of deficiency is valid on its face, the Court will not look behind the notice to examine the motives of the IRS or the administrative policies and procedures involved in making the determinations in the notice. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). An exception to this rule exists, but only where there is substantial evidence that the IRS's conduct was either unconstitutional or sufficiently egregious as to jeopardize the integrity of the judicial process. See id. at 328. The rationale for not looking behind the notice is that a trial before the Tax Court is a proceeding de

[*19] novo; we determine a taxpayer's tax liability on the merits as presented at trial and not on the basis of any record developed at the administrative level. Jackson v. Commissioner, 73 T.C. 394, 400 (1979).

The notice of deficiency issued to Longino on September 14, 2009, is valid on its face. It shows that a deficiency of $39,757 was determined for tax year 2006. It shows that the deficiency resulted from the denial of certain deductions he claimed on his original return. It is evident from the face of the notice that the determination was made by reference to information particular to Longino. Because the notice is valid on its face, the Court will not look behind the notice and investigate the motives behind its issue. Longino alleges that the IRS committed numerous administrative errors. However, even if we assume for the sake of argument that all of his allegations are true, the notice of deficiency issued to Longino was not the result of conduct that was unconstitutional or so egregious as to jeopardize the integrity of the judicial process.

Second, Longino contends that the notice of deficiency is defective because it was issued with respect to the original return. According to Longino, the correct return for review, if any, was the second amended return, and the deficiency notice's failure to address the second amended return renders it invalid. This argument is also without merit. As a matter of internal administration, the IRS

**[\*20]** may decide to accept amended returns, but it is not statutorily required to do so, nor is it required to treat an amended return as superseding an original return. See Roberts v. Commissioner, T.C. Memo. 2012-144, slip op. at 5; Pace v. Commissioner, T.C. Memo. 2010-272, slip op. at 8; see also Fayeghi v. Commissioner, 211 F.3d 504, 507 (9th Cir. 2000), aff'g T.C. Memo. 1998-297. The IRS selected Longino's original return for review and issued a notice of deficiency based on that return; it was under no obligation to do otherwise. The notice of deficiency issued to Longino for tax year 2006 is valid.

B.      Presumption of Correctness

We generally presume that the determinations in the notice of deficiency are correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). An effect of this presumption is to give the taxpayer the burden of going forward with evidence that the IRS's determinations are incorrect. Jackson v. Commissioner, 73 T.C. at 400 (citing Barnes v. Commissioner, 408 F.2d 65 (7th Cir. 1969), aff'g T.C. Memo. 1967-250) (income-tax deficiency case); Rockwell v. Commissioner, 512 F.2d 882, 885 (9th Cir. 1975) (income-tax deficiency case), aff'g T.C. Memo. 1972-133. However, the presumption of correctness does not attach and the burden of going forward with evidence shifts to the IRS if the determinations in the notice are arbitrary, excessive, or without foundation. See Gates v. Commissioner, 135

**[\*21]** T.C. 1, 4 (2010); Berkery v. Commissioner, 91 T.C. 179, 186 (1988), aff'd without published opinion, 872 F.2d 411 (3d Cir. 1989).

Longino asserts that the notice of deficiency is not entitled to the presumption of correctness for the same reasons that he argued it was invalid: the notice was not addressed to the correct return and it was issued as a result of administrative error. As we noted above, the IRS was not required to accept either of Longino's amended returns or to address the notice of deficiency to either of those amended returns. Furthermore, the determinations in the notice are not arbitrary or without foundation. The notice denied certain enumerated deductions Longino claimed on his original return, resulting in the determination of a particular deficiency and the imposition of an accuracy-related penalty, but did not assert that Longino had any unreported income. The determinations in the notice of deficiency are entitled to a presumption of correctness.

C.    Burden of Proof

In general, the taxpayer bears the burden of proving that the determinations in the notice of deficiency are erroneous. See Rule 142(a); TG Missouri Corp. v. Commissioner, 133 T.C. 278, 284 (2009). Under section 7491, the burden of proof will be imposed on the IRS with respect to any factual issue relevant to determining a taxpayer's tax liability, provided the taxpayer has: (1) introduced

[*22] credible evidence with respect to that factual issue, (2) complied with all applicable substantiation requirements, (3) maintained all required records, and (4) cooperated with reasonable requests for information from the IRS. Sec. 7491(a)(1) and (2); see Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). Credible evidence, for the purposes of this section, is the quality of evidence which, after critical analysis, a court would find sufficient upon which to base a decision if no contrary evidence were submitted. Baker v. Commissioner, 122 T.C. 143, 168 (2004). The taxpayer bears the burden of proving he or she has satisfied all the requirements of section 7491. Rolfs v. Commissioner, 135 T.C. 471, 483 (2010), aff'd, 668 F.3d 888 (7th Cir. 2012).

Longino contends that he introduced credible evidence with respect to all factual issues relevant to his 2006 tax liability and that he satisfied all the requirements for substantiation, recordkeeping, and cooperation with the IRS. We find that Longino has satisfied the requirements of section 7491, and the burden of proof rests with the IRS, with respect to the following: (1) a $197.15 deduction for business use of his home, see infra p. 46, (2) a $60 deduction for "law library" expenses, see infra pp. 51-52, and (3) a $665 deduction for license expenses, see infra pp. 52-53. With respect to all other amounts he seeks to deduct in these three categories, he has failed to meet applicable substantiation requirements and,

**[\*23]** consequently, has failed to satisfy the requirements of section 7491. He has also failed to substantiate deductions and, consequently, has failed to meet the requirements of section 7491, with respect to medical-and-dental expenses, charitable contributions, car-and-truck expenses, telephone expenses, "client costs advanced", postage expenses, other miscellaneous office expenses, and tuition-and-fees expenses. The burden of proof on these issues is on Longino. With respect to Longino's entitlement to the disputed dependency-exemption deductions, the child tax credit, the additional child tax credit, and the domestic-production-activities deduction, our conclusions are based on a preponderance of the evidence and, thus, the allocation of the burden of proof is immaterial. See Van Dusen v. Commissioner, 136 T.C. 515, 522 (2011); Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998).

II. Deficiencies in Tax

A. Dependency-Exemption Deductions for Children Not in Longino's Custody

On his original return Longino claimed dependency-exemption deductions for four children: F.L., J.L., T.L., and John Longino, Jr. Longino also claimed the same four children as dependents on his first and second amended returns. In its notice of deficiency, the IRS denied dependency-exemption deductions for the

**[*24]** three children who did not reside with Longino during the greater part of tax year 2006: F.L., J.L., and T.L. Longino argues that he was entitled to claim these three children as dependents on his 2006 return even if they did not reside with him for more than half the year because he was specifically authorized to do so by a divorce decree. The IRS contends that he is not entitled to dependency-exemption deductions for these children because he failed to attach to his return a signed Form 8332 or its equivalent. We agree with the position of the IRS.

Section 151 allows a taxpayer to claim an exemption deduction for each of his or her dependents. See sec. 151(a) and (c). Section 152(a) defines "dependent" as either a "qualifying child" or a "qualifying relative". Sec. 152(a)(1) and (2). Generally, an individual will be considered the "qualifying child" of a taxpayer only if he or she resides with the taxpayer for more than half of the taxable year. See sec. 152(c)(1)(B). However, section 152(e) provides a special rule for children of divorced parents. Under this rule, a child is considered the "qualifying child" of his or her noncustodial parent (i.e. the parent other than the parent who has custody of that child for the greater portion of the year, see sec. 152(e)(4)(A) and (B)), if the requirements of section 152(e)(2) are satisfied,[10] sec.

---

[10]Sec. 152(e)(3) provides an alternative rule whereby a noncustodial parent may claim a dependency exemption but, because it applies only to written

(continued...)

[*25] 152(e)(1) and (2). Section 152(e)(2) requires that: (1) the custodial parent (i.e. the parent who has custody of the child for the greater portion of the year) signs a valid written declaration that the custodial parent will not claim the child as a dependent, and (2) the noncustodial parent attaches such written declaration to his or her return.

The written declaration required by section 152(e)(2) either must be made on a Form 8332 or must conform to the substance of Form 8332. See sec. 1.152-4T(a), Q&A-3, Temporary Income Tax Regs., 49 Fed. Reg. 34459 (Aug. 31, 1984); see also Walters v. Commissioner, T.C. Memo. 2012-230, at *4; Briscoe v. Commissioner, T.C. Memo. 2011-165, slip op. at 6. It must include the signature of the custodial parent. See Miller v. Commissioner, 114 T.C. 184, 195-196 (2000), aff'd sub nom. Lovejoy v. Commissioner, 293 F.3d 1208 (10th Cir. 2002). As we noted in Miller, "[s]ection 152(e)(2) clearly requires that the custodial parent release the dependency exemption for a child by signing a written declaration to that effect". Id. A state court order that is not signed by the custodial parent is not a written declaration meeting the requirements of section 152(e)(2). Id. at 196.

_____

[10](...continued)
instruments executed before 1985, we do not discuss it further here.

**[*26]** Longino concedes that, for the greater part of 2006, F.L., J.L., and T.L. did not live with him. Therefore, they are not the qualifying children of Longino unless their custodial parent, Petereit, signed a Form 8332 (or substitute written declaration) and Longino attached the Form 8332 (or substitute written declaration) to his 2006 tax return. Longino did not attach to his original return a Form 8332 or any other written declaration signed by Petereit concerning the release of dependency exemptions. Similarly, he did not attach any such documents to either of his amended returns. At trial, he presented a divorce decree, which incorporated an agreement that had been read into the record of a mediation proceeding. This agreement provides that Longino is entitled to claim all three of his children with Petereit as dependents on his federal income-tax returns up through tax year 2006. However, neither the divorce decree nor the agreement is signed by Petereit--the custodial parent--or her legal representative.[11] Nor was it attached to any of Longino's returns. Consequently, he is not entitled to dependency exemption deductions for F.L., J.L., and T.L.

---

[11]The divorce decree was signed by Petereit's attorney, but only "as to form". See Miller v. Commissioner, 114 T.C. 184, 193 (2000) ("The signature of Ms. Miller's attorney approving the form of the Permanent Orders does not satisfy the mandate of section 152(e)(2)."), aff'd sub nom. Lovejoy v. Commissioner, 293 F.3d 1208 (10th Cir. 2002).

[*27] B.     Child Tax Credit and Additional Child Tax Credit

On his original return Longino claimed a $753 child tax credit pursuant to section 24(a) and a $2,247 additional child tax credit pursuant to section 24(d). On the return he identified F.L., J.L., and T.L. as the "qualifying child[ren]" with respect to whom the credit was claimed. On his first and second amended returns Longino claimed no child tax credit, but he did claim a $3,000 additional child tax credit for F.L., J.L., and T.L. on each of those returns. The IRS asserts that Longino is not entitled to any credit under section 24(a) or (d) because he has no qualifying children. We agree.

Section 24(a) allows a taxpayer a $1,000 credit against income tax with respect to each "qualifying child". Section 24(d) makes a portion of that credit-- commonly referred to as the additional child tax credit--refundable. See, e.g., Watley v. Commissioner, T.C. Memo. 2012-240, at *8. For purposes of section 24, a "qualifying child" is a qualifying child of the taxpayer, as defined in section 152(c), who has not yet reached the age of 17. Sec. 24(c).

Because we have concluded that F.L., J.L., and T.L. are not Longino's qualifying children nor are they treated as such under section 152(e), he is not entitled to the child tax credit or the additional child tax credit for 2006.

[*28] C.     Medical-and-Dental Expenses

Longino reported medical-and-dental expenses of $8,526 on his original return.[12]  On his first and second amended returns he reduced the claim to $8,604. In his posttrial brief, however, he asserts that he actually incurred $11,949.34 in deductible medical-and-dental expenses during 2006.  The IRS contends that Longino has not proven that he is entitled to deduct any amounts for medical-and-dental expenses, and we agree.

Section 213(a) allows a taxpayer a deduction for expenses paid during the taxable year for medical care of the taxpayer, the taxpayer's spouse, or a dependent of the taxpayer, to the extent that those expenses exceed 7.5% of adjusted gross income.  As relevant here, section 213(d)(1)(A) defines "medical care" as amounts paid for "the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body". Regulations promulgated pursuant to section 213 provide that "[d]eductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or

---

[12]Because sec. 213(a) allows a deduction for medical-and-dental expenses only to the extent they exceed 7.5% of adjusted gross income, Longino claimed a deduction for only $3,412 of the total medical-and-dental expenses reported on his return.

[*29] mental defect or illness." Sec. 1.213-1(e)(1)(ii), Income Tax Regs.  An expense is not a medical-care expense merely because it is beneficial to the general health of  an individual.  Id.  Section 213 carves out a limited exception to the general rule in section 262 that prohibits the deduction of personal, family, and living expenses.  See Jacobs v. Commissioner, 62 T.C. 813, 818 (1974).

The evidence Longino submitted proves that $7,206.81 of the $11,949.34 alleged medical-and-dental expenses was actually incurred.  Of the $7,206.81 in expenses, $4,421.20 of expenses was for payments related to IVF procedures undergone by Longino's fiance.  The remaining $4,742.53 in alleged medical expenditures is wholly unsubstantiated except for a blanket statement by Longino in his testimony that he incurred a total of $11,949.34 in medical-and-dental expenses. Thus, the $11,949.34 can be broken into the following three categories:  (1) $4,742.53 of expenses for which there is no documentation, (2) $4,421.20 of expenses related to the IVF procedures undergone by Longino's fiance,[13] and (3) $2,785.61 of non-IVF expenses for which there is written documentation that an expense was incurred.  We consider each of these three categories in turn.

---

[13]For all of the IVF expenses, there is documentation that the expenses were incurred.

**[*30]** We first consider the $4,742.53 in expenses that are wholly unsubstantiated by documentary evidence. Longino submitted to the Court a spreadsheet showing how he calculated total medical-and-dental expenses of $11,949.34. The spreadsheet was not admitted into evidence. No other documents substantiate the $4,742.53 category of expenses. Thus, the only evidence that Longino incurred the $4,742.53 category of expenses is Longino's blanket assertion he incurred $11,949.34 in medical-and-dental expenses. We do not believe his blanket assertion. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Under the circumstances, Longino has failed to satisfy his burden of proof.

We next consider the $4,421.20 in IVF expenses. There is documentary evidence that these expenses were incurred, and that these expenses were incurred for IVF treatments for Longino's former fiance. As we explained in Magdalin v. Commissioner, T.C. Memo. 2008-293, aff'd without published opinion, 105 A.F.T.R.2d (RIA) 2010-442 (1st Cir. 2009), a taxpayer cannot deduct the IVF expenses of an unrelated person if the taxpayer does not have a defect which prevents him or her from naturally conceiving children. Longino has not proven that he has a defect preventing him from naturally conceiving children. Therefore, he is not entitled to deduct $4,421.20 in expenses for his former fiance's IVF treatments.

**[*31]** We next consider the $2,785.61 in non-IVF expenses for which there is documentation that the expenses were incurred. There is documentary evidence that Longino incurred these expenses. However, Longino introduced no evidence, testimonial or otherwise, concerning the type of medical care provided, the recipient of the care, or the condition or illness for which medical care was sought. The only evidence we have as to the nature of the expenses is the name of the payees-- information that is found on Longino's credit-card statements and canceled checks. For some but not all of these expenses, these documents suggest that the payee was a health care service provider.[14] However, not all payments to health care service providers are deductible under section 213.[15] With respect to the $2,785.61 category of expenses, Longino has not met his burden of proving that they were incurred for medical care as defined in section 213(d). Consequently, we find that he is not entitled to deduct this or any amount of medical-and-dental expenses.

---

[14]For example, Longino made an $82.16 payment to "Dr. John Chung" and a $19.00 payment to an entity called "Family Walk-in Clinic".

[15]For example, payments for the medical care of an individual who is not the spouse or dependent of the taxpayer are generally not deductible. See sec. 213(a).

[*32] D.    Charitable Contributions

On his original return, Longino claimed a $25,000 deduction for contributions to charity, which the IRS denied in its notice of deficiency.  On his first and second amended returns, he increased the claimed charitable-contribution deduction to $25,800.  At trial and on brief he asserts that he is entitled to a $26,176 charitable-contribution deduction.  According to Longino, this $26,176 total comprises contributions of the following amounts:  (1) a $25,000 cash contribution to Port Tack Ministries, (2) an $800 contribution made by check to a Lutheran church, (3) a $35 payment made by credit card to an entity called "North Point Community", (4) a $300 cash contribution to an undisclosed organization, and (5) a $41 cash contribution to an undisclosed organization.  We hold that Longino is not entitled to any deduction for contributions to charity.

Section 170(a)(1) allows a taxpayer to deduct any charitable contribution, payment of which is made during the taxable year.  A charitable contribution is a contribution or gift for the use of an organization described in section 170(c).  See sec. 170(c).  A charitable contribution is allowable as a deduction only if "verified" as provided in regulations issued by the Secretary of Treasury, including the record-maintenance requirement of section 1.170A-13(a)(1), Income Tax Regs.  See sec. 170(a)(1).  Section 1.170A-13(a)(1), Income Tax Regs.,

[*33] provides that a taxpayer must "maintain" for each contribution either: (1) a canceled check; (2) a receipt or other communication from the donee organization showing the name of the donee and the date and amount of the contribution; or (3) other reliable written records which provide such information. For contributions of $250 or more, a taxpayer is not entitled to a deduction for any part of the contribution unless the taxpayer "substantiates" the contribution with a contemporaneous written acknowledgment from the donee organization.[16] Sec. 170(f)(8)(A); sec. 1.170A-13(f)(1), Income Tax Regs. The written acknowledgment must include the following information: (1) the amount of cash the taxpayer paid to the donee organization or a description of the property transferred; (2) a statement of whether the donee organization provided any goods or services in consideration for the cash or property transferred; (3) if the donee organization provides any goods and services other than intangible religious benefits, a description and good-faith estimate of the value of those goods and services; and (4) if the donee organization provides only intangible religious

---

[16]Sec. 170(f)(8)(D) provides that a taxpayer is relieved of the obligation to substantiate his or her contribution with the contemporary written acknowledgment required by sec. 170(f)(8)(A) if the donee organization reports the contribution on a return filed in accordance with the regulations. Longino does not assert and the evidence in the record does not suggest that Port Tack Ministries filed any such return. Therefore, this exception is inapplicable here.

[*34] benefit, a statement to that effect. Sec. 170(f)(8)(B); sec. 1.170A-13(f)(2), Income Tax Regs.

Longino alleges that he made a cash contribution of $25,000 to Port Tack Ministries on December 1, 2006. The IRS asserts a number of arguments as to why Longino is not entitled to a deduction for this alleged contribution: (1) the deduction is generally unsubstantiated, (2) Port Tack Ministries was not yet in existence in 2006, (3) even if Port Tack Ministries did exist in 2006, it was not an organization described in section 170(c), and (4) even if Port Tack Ministries was in existence as an organization described in section 170(c) during 2006, Longino did not provide credible evidence that he parted with the $25,000. We need not address these last three arguments because--even assuming that Port Tack Ministries existed as an organization described in section 170(c) in 2006 and that a contribution to it was actually made--Longino's alleged contribution was not properly substantiated.[17] Because the amount of the alleged contribution exceeds

---

[17]The IRS did not specifically point to Longino's failure to evidence his alleged contribution with a contemporaneous written acknowledgment. However, in both its pretrial memorandum and its opening brief, the IRS did argue more generally that Longino did not "substantiate" this alleged contribution. We find that this was sufficient to put Longino on notice that he would be required to demonstrate his compliance with all substantiation requirements applicable to charitable contributions, including the contemporaneous-written-acknowledgment requirement. Under the circumstances, Longino is not prejudiced by the Court's

(continued...)

[*35] $250, it must be evidenced by a contemporary written acknowledgment in order to be deductible.  See sec. 170(f)(8)(A); sec. 1.170A-13(f)(1), Income Tax Regs.  As evidence of his alleged contribution, Longino provided a self-generated letter, dated December 1, 2006, and signed by himself.  The letter states that the amount of cash contributed was $25,000, but it does not include any of the other required information.  In particular, the letter is silent as to whether Longino received any goods or services in exchange for the cash.  Both the Code and the regulations provide that such information is a necessary element of the contemporary written acknowledgment.  See sec. 170(f)(8)(B)(ii); sec. 1.170A-13(f)(2)(ii), Income Tax Regs.  Because Longino failed to provide a contemporary written acknowledgment of his contribution, we find that he is not entitled to deduct any amount for contributions to Port Tack Ministries.  See Linzy v. Commissioner, T.C. Memo. 2011-264, slip op. at 15-16 (denying a $2,400 deduction for contribution to school because receipt failed to state whether taxpayer received any goods or services in exchange for contribution); Kendrix v. Commissioner, T.C. Memo. 2006-9, slip op. at 14-16 (denying deductions for certain contributions to church in excess of $250 because documentation provided

---

[17](...continued)
resolving the deductibility of the alleged contribution to Port Tack Ministries on the basis of the contemporaneous-written-acknowledgment requirement.

**[\*36]** by taxpayer failed to state whether church provided any goods or services in exchange for contributions).

Longino's alleged $800 contribution to a Lutheran church also exceeds $250. Therefore, it, too, must be evidenced by a contemporaneous written acknowledgment. Longino has failed to provide any. Longino's bank statements reflect that an $800 payment was made to a Lutheran church on August 12, 2006. However, the Code and the regulations require a contemporary written acknowledgment from the donee, which Longino failed to provide. Consequently, we hold that Longino is not entitled to deduct any of this amount as a charitable contribution.[18]

The alleged $35 contribution Longino seeks to deduct does not exceed $250. Consequently, it need not be evidenced by a contemporary written acknowledgment, but it must still be substantiated as provided in section 1.170A-

---

[18]The IRS did not specifically identify Longino's failure to evidence this alleged contribution with a contemporary written acknowledgment as grounds for denying the deduction. However, in both its pretrial memorandum and its opening brief, the IRS did argue more generally that Longino did not "substantiate" these and other alleged charitable contributions. We find that this was sufficient to put Longino on notice that he would be required to demonstrate his compliance with all substantiation requirements applicable to charitable contributions, including the contemporaneous-written-acknowledgment requirement. Under the circumstances, Longino is not prejudiced by the Court resolving the deductibility of this alleged contribution on the basis of the contemporaneous-written-acknowledgment requirement.

[*37] 13(a)(1), Income Tax Regs., which requires a taxpayer to substantiate charitable contributions with a canceled check, a letter from the donee organization, or other comparable documentation. In support of his alleged $35 deduction, Longino put forward his Visa credit-card statement. This statement does reflect that a $35 payment was made to an entity called "North Point Community Alphretta GA" on July 9, 2006. However, the record contains no evidence as to whether this entity meets the requirements of section 170(c). Consequently, Longino has not met his burden of proving that he is entitled to a deduction for this payment.

We also find that Longino is not entitled to deduct either of his alleged $300 and $41 cash contributions. The only evidence in the record regarding the alleged $300 contribution is Longino's testimony that he made the contribution. There is no evidence of the identity of the recipient. Therefore, Longino has not met his burden of proving that he made a contribution to an organization described in section 170(c).

There is no evidence in the record that Longino made the alleged contribution of $41. Therefore Longino has failed to meet his burden of proving he made the alleged charitable contribution. We hold he is not entitled to a deduction for that alleged contribution.

**[\*38]** E.     Schedule-C Business Expenses

Section 162(a) allows a taxpayer to deduct all ordinary and necessary expenses incurred in carrying on a trade or business.  An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business.  See Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is "necessary" if it is "appropriate and helpful" in the taxpayer's business, but it need not be absolutely essential.  Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (citing Welch v. Helvering, 290 U.S. 111, 113 (1933)).  No deduction is allowed for personal, living, or family expenses.  Sec. 262(a).  Whether an expense is deductible pursuant to section 162 is a question of fact to be decided on the basis of all the relevant facts and circumstances.  Cloud v. Commissioner, 97 T.C. 613, 618 (1991).

A taxpayer must maintain sufficient records to establish the amounts of allowable deductions and to enable the IRS to determine his or her correct tax liability.  See sec. 6001; Shea v. Commissioner, 112 T.C. 183, 186 (1999).  If a taxpayer establishes that he or she incurred a deductible expense but does not establish the exact amount, the Court should estimate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making (Cohan rule).  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d

**[\*39]** Cir. 1930). However, in order for the Court to estimate the amount of the allowable deduction, there must be sufficient evidence in the record to provide a basis for such an estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Absent any evidentiary basis, such an estimate would be "unguided largesse." Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957).

Certain expenses, including those attributable to travel, gifts, and property of the type listed in section 280F(d)(4) (defined as "listed property"), are subject to heightened substantiation requirements. Section 274(d) provides that no deduction will be allowed for such expenses unless the taxpayer "substantiates by adequate records or by sufficient evidence": (1) the amount of the expense, (2) the time and place of the expense or the use of the property, and (3) the business purpose of the expenditure or use. The requirements of section 274(d) override the Cohan rule that allows us to estimate the amount of a deductible expense. See sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

To substantiate an expense by "adequate records", the taxpayer must maintain and produce an account book, log, diary, or similar record which, along with other documentary evidence, establishes each element of the expense or use. See sec. 1.274-5T(c)(1), (2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46016,

**[*40]** 46017 (Nov. 6, 1985).  A taxpayer who is unable to comply with the "adequate records" requirements must instead establish each element of the expense or use by "sufficient evidence".  Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).  This requires that the taxpayer establish each element by the taxpayer's "own statement, whether written or oral, containing specific information in detail as to such element" and by "other corroborative evidence sufficient to establish such element."  Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., supra.

        1.     Car-and-Truck Expenses

On Schedule C of his original and both amended returns, Longino reported that he actually incurred $38,627 of car-and-truck expenses and claimed that amount as a deduction.  However, at trial he conceded that he could not substantiate his actual expenses.  He seeks instead to use the standard mileage rate to calculate his deductible car and truck expenses.  Applying this method, he asserts that he is entitled to a deduction of $17,731.  We find that he is not entitled to a deduction for car-and-truck expenses in any amount.

Section 280F(d)(4) defines "listed property" to include passenger automobiles.  Sec. 280F(d)(4)(A)(i).  Because the car-and-truck expenses Longino seeks to deduct are attributable to listed property, he must satisfy the heightened

**[*41]** substantiation requirements of section 274(d) in order to deduct those expenses. With respect to car-and-truck expenses, a taxpayer may opt to use the standard mileage rate, as established by the IRS for a given tax year, in lieu of substantiating actual expenses. See sec. 1.274-5(j)(2), Income Tax Regs. For 2006, the standard mileage rate for business use of a passenger automobile was 44.5 cents per mile. Rev. Proc. 2005-78, sec. 2, 2005-2 C.B. 1177. A taxpayer who opts to use the standard mileage rate is not relieved of the obligation to substantiate the amount of business mileage or the time and place of each business use. Sec. 1.274-5(j)(2), Income Tax Regs. Thus, these items of information (i.e., the amount of business mileage and the time and place of each business use of the vehicle) must be substantiated through adequate records or sufficient evidence. See sec. 1.274-5T(b)(2), (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016 (Nov. 6, 1985).

Longino did not maintain any contemporaneous record of the miles he traveled for business during 2006. Instead, he offered into evidence a calendar of his business appointments for each day. Using the calendar as a reference, he testified at trial as to the location of the business appointments. He attempted to explain how he traveled to each appointment, thus reconstructing the general route he drove each day between his business appointments. None of these

**[\*42]** reconstructed routes include the locations of any personal errands and appointments because, according to Longino, no personal trips took place along these routes. Longino introduced into evidence directions generated by the website MapQuest showing the distance from his home office to most of the towns in which he had business appointments, but not printouts showing the distance from each particular town in which he had a business appointment to the next town in which he had a business appointment. With the exception of the routes traveled in January, Longino did not tell the Court, in his testimony or in his posttrial brief, the number of miles he traveled along these reconstructed routes. For January, Longino introduced a spreadsheet, to which the IRS did not object, listing the total miles he traveled along the reconstructed routes for each day of that month.

This evidence does not substantiate the amount of Longino's business mileage for two reasons. First, although Longino testified that his reconstructed routes included travel only to business appointments, we do not find this testimony to be credible. His credit-card statements reveal that on some of the days when he had a business appointment in a particular town, he also made personal purchases in the same town on the same day. This suggests that Longino conducted personal errands while traveling on the reconstructed routes. In addition to personal

**[*43]** errands that are evidenced by credit-card statements, we find that Longino made other undocumented personal trips on the reconstructed routes--visiting family and friends, for example.

Second, even if we believe that Longino traveled only along the reconstructed routes and made no personal detours, Longino does not articulate how his business miles should be computed. Only for January did Longino supply us with a list of the business miles that he supposedly traveled. For other months, the evidence in the record is insufficient to determine the length of the reconstructed routes. The MapQuest directions he provided give distances between his home offices and the various towns where he had meetings, but he did not testify that he followed the routes described in the MapQuest directions (which are the routes for which the MapQuest directions give a mileage estimate). Furthermore, he did not testify how many miles he drove between his various business appointments.[19]

---

[19]In his brief, he claims that he is entitled to a car-and-truck-expense deduction of $17,731, but this amount was apparently not calculated on the basis of miles traveled on the reconstructed routes. Rather, $17,731 is equal to 90% of the total number of miles he purportedly drove the PT Cruiser and the pickup truck during 2006, multiplied by the .445 standard mileage rate. Thus, $17,731 = 90% (35,268 miles + 9,003 miles) (.445).

**[\*44]** While we believe that Longino did use his vehicles for some business travel, he failed to substantiate the amount of his business mileage as required by section 274(d).  Consequently, we find that he is not entitled to deduct any amount for car-and-truck expenses.

### 2. Expenses for Business Use of Home

On Schedule C of his original and amended returns, Longino claimed deductions for $2,307 in expenses attributable to the business use of his homes.  At trial, Longino claimed he operated his legal practice out of his house in Chatsworth, Georgia, and then his apartment in Canton, Georgia (to which he moved in May 2006).  He claimed that the first floor of the Chatsworth house (25% of the total area of the house) and two of the eight rooms of the Canton apartment (the "computer office room" and the "sun room") were used exclusively for his legal practice.  The IRS argues that Longino did not use any portion of either his house or his apartment exclusively as a principal place of business and that he is not entitled to any deduction for the business use of either residence.

Section 280A provides that, generally, no deduction is allowed with respect to the personal residence of a taxpayer.  Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1556 (1987).  However, under section 280A(c)(1)(A), this prohibition does not apply to expenses allocable to a portion of the taxpayer's

**[\*45]** residence that is used exclusively and on a regular basis as the principal place

of business for any trade or business of the taxpayer.  The exclusive use requirement

is an "all-or-nothing" standard.  Hamacher v. Commissioner, 94 T.C. 348, 357

(1990).  The legislative history explains:

> Exclusive use of a portion of a taxpayer's dwelling unit means that the taxpayer must use a specific part of a dwelling unit solely for the purpose of carrying on his trade or business.  The use of a portion of a dwelling unit for both personal purposes and for the carrying on of a trade or business does not meet the exclusive use test. \* \* \*

S. Rept. No. 94-938, at 48 (1976), 1976-3 C.B. (Vol. 3) 49, 186.

We first consider the Chatsworth house.  We find that Longino used the first

floor of the premises--25% of the total area of the home--exclusively and on a

regular basis as the principal place of business of his law practice.  The area's

physical separation from the living areas of the home, its physical conversion from

a residential-type "mother-in-law" suite to an office, and the fact that it had a

separate entrance with an awning all inform our finding.  We next consider what

expenses are allocable to the first floor of the Chatsworth house.  Longino proved

that he incurred $538.59 for utilities and $250 for extermination services at the

Chatsworth house during 2006.  Total proven expenses for the house were

$788.59 ($538.59 + $250).  Of the $788.59 in total expenses, 25% is allocable to

**[*46]** the first floor. Therefore, we hold that Longino is entitled to deduct 25% of $788.59, or $197.15.

We next consider the "computer office room" of the Canton apartment. We find that Longino did not prove that he used the "computer office room" exclusively as the principal place of business of his law practice. Longino testified cursorily that he used the room exclusively for his law practice. But he offered almost no details about what was in the room and how the room was used. Although his reference to the room as the "computer office room" suggests that his computer was in the room, we believe that he used his computer for both personal and business tasks. Under these circumstances, Longino has not met his burden of proving that he used the "computer office room" exclusively as his principal place of business. Consequently, we hold that he is not entitled under section 280A(c)(1)(A) to any deduction for business use of the "computer office room".

We next consider the "sun room" of the Canton apartment. We find that Longino did not prove that he used the "sun room" exclusively and on a regular basis as the principal place of business of his law practice. Longino testified that he used the "sun room" for storing documents and supplies. He did not testify that these documents and supplies related solely to his law practice. Under these

**[*47]** circumstances, he has not satisfied his burden of proving that he is entitled to deduct expenses under section 280A(c)(1)(A) allocable to the "sun room". [20]

    3.    Telephone

Longino claimed $5,117 in telephone expenses as a Schedule C deduction on his original return. He claimed the same amount as a deduction on both amended returns. At trial, he reduced the amount of his deductible telephone expenses to $2,645.90. Then, in his posttrial brief, Longino asserted yet another number, claiming that he is entitled to deduct $3,246 in telephone expenses. We find that he is not entitled to any deduction for telephone expenses.

Expenses for telephone service are deductible under section 162(a), provided they are ordinary and necessary to the taxpayer's trade or business. See Vanicek v. Commissioner, 85 T.C. at 742. To the extent that telephone expenses are attributable to nonbusiness use, they are nondeductible personal living expenses. See sec. 262(a). Section 262(b) provides that the first telephone line in

---

[20]Sec. 280A(c)(2) allows a home office deduction for space devoted to storage where the storage space is used to house inventory or product samples by a taxpayer who is engaged in the trade or business of sales at wholesale or retail. However, this section does not authorize a deduction for expenses allocable to the "sun room". Longino, an attorney, did not use the "sun room" to store inventory or product samples, nor does his business involve the sale of products at wholesale or retail.

**[*48]** a taxpayer's residence will be treated as a personal expense.  See <u>Bogue v.</u>
<u>Commissioner</u>, T.C. Memo. 2011-164, slip op. at 40.

Cellular phones are included in the section 280F definition of listed property.
Sec. 280F(d)(4)(v).  Therefore, expenses attributable to cellular phones are subject
to the heightened substantiation requirements of section 274(d), which require a
taxpayer to substantiate (1) the amount of each use or expenditure, (2) the time and
place of the use or expenditure, and (3) its business purpose.  Sec. 274(d)(4); sec.
1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

In support of his telephone expense deduction, Longino introduced copies of
canceled checks and credit-card statements showing that he made payments on
various dates and in various amounts to four different vendors:  (1) "Cingular", (2)
"AllTel", (3)  "Powernet Global", and (4) "Yahoo*Voice".  He did not introduce
any bills or invoices.  Longino's testimony regarding his telephone expenses was
perfunctory, vague, and inconsistent.

The documentary and testimonial evidence is insufficient to satisfy
Longino's burden of proof for several reasons.  First, the evidence does not
demonstrate that all of the payments to the four vendors were for telephone

[*49] services.[21]  This is significant because Longino took the position that all the

amounts were expended for telephone services related to his law practice.  Second,

even if we were convinced that these payments were for telephone services, there is

insufficient proof that the services were provided to Longino (as opposed to

members of his family, for example).  Third, even if we were convinced that these

payments were for telephone services for Longino's law practice, there is

insufficient evidence to allow us to estimate what proportion of his telephone use

was attributable to his business.[22]  Fourth, even if the payments were for telephone

services to Longino, some of the payments appear to be for cellular telephone

service.  Longino failed to substantiate, within the meaning of section 274(d)(4),

---

[21]There is little evidence in the record showing what the payments were for.
The minimal evidence suggests that some of the payments for something other than
telephone services:

- A handwritten notation on Longino's credit card statement indicates that one
  charge was for the purchase of a battery.
- Longino's credit-card statements categorize all payments to "Powernet
  Global" as "Merchandise/Retail" expenses.  This is the expense category that
  included payments to retail stores like CVS and Walmart.

[22]With respect to noncellular telephone expenses, we may, under the Cohan
rule, estimate the deductible portion of the expenses (i.e. those expenses which are
not attributable the first telephone line in a residence and are attributable to business
use of the telephone), provided the taxpayer presents sufficient evidence to allow us
to make such an estimate.  See, e.g., Lang v. Commissioner, T.C. Memo. 2010-152,
slip op. at 11; Aref v. Commissioner, T.C. Memo. 2009-118, slip op. at 11.

**[*50]** the amount of time he used his cellular phone for business purposes, the time and place of these uses, and the business purpose of these uses. Fifth, some of the payments may be for a first residential telephone line, the expenses of which are per se nondeductible pursuant to section 262(b).

For these reasons, we hold that Longino is not entitled to deduct any amounts incurred for telephone service.

### 4. "Law Library" Expenses

On Schedule C of his original and amended returns, Longino claimed "law library" expenses of $2,666. At trial, he claimed that such expenses totaled only $2,100.86. Then, in his brief, he reduced this figure again, to $2,097.00. We hold that, with the exception of a $60 payment to the Mercer Law Review, Longino is not entitled to deduct any "law library" expenses.

At trial Longino described his "law library" expenses as including expenses for books and high-speed internet service. Internet expenses, like telephone expenses, are deductible under section 162 to the extent that the expenses are ordinary and necessary in the taxpayer's trade or business. See, e.g. Bogue v. Commissioner, slip op. at 41; Fessey v. Commissioner, T.C. Memo. 2010-191, slip op. at 13. To the extent that a taxpayer's internet expense is attributable to nonbusiness use, it constitutes a nondeductible personal expense. See sec. 262(a).

**[*51]** Internet expenses are not subject to the heightened substantiation rules of section 274(d), and we may therefore estimate the deductible amount of the expense under the <u>Cohan</u> rule. <u>See</u> <u>Alami v. Commissioner</u>, T.C. Memo. 2009-42, slip op. at 26.

As evidence of his "law library" expenses, Longino offered credit card statements, bank statements, and canceled checks showing he made payments to a variety of vendors, several of which appear to be cable television providers. He offered no evidence, testimonial or otherwise, explaining what products or services each of these vendors provided and how these products or services related to his business. He also offered no evidence showing what percentage of his internet use was attributable to business. Therefore, even if we could identify which of Longino's payments were incurred for internet service, we would have no basis to estimate the deductible portions of those payments. The only payment that relates to Longino's law practice is a $60 check written to the Mercer Law Review. Because a taxpayer may deduct the cost of publications related to his or her trade or business, <u>see</u> <u>Westby v. Commissioner</u>, T.C. Memo. 2004-179, slip op. at 38 (allowing a taxpayer engaged in the practice of law to deduct the cost of subscriptions to professional publications), we hold that Longino may deduct this $60 payment. However, with respect to the remainder of his "law library"

[*52] expenses, Longino failed to meet his burden of proving that these expenses relate to his trade or business. Consequently, he is not entitled to deduct them.

     5.     License Expenses

Longino claimed a $245 deduction for license expenses on Schedule C of his original return. He also claimed this amount as a deduction for license expenses on both of his amended returns. However, at trial and in his posttrial brief, Longino claimed that those expenses actually totaled $7,882.[23] These expenses can be broken down into the following four categories: (1) bar dues, (2) continuing legal education expenses (CLE expenses), (3) a $5,000 payment that Longino claims was related to maintaining his law license, and (4) payments about which there is so little information in the record that we cannot identify the goods or service to which they correspond. We address each subcategory in turn.

Longino provided canceled checks evidencing a $265 payment to the Florida Bar and a $230 payment to the State Bar of Georgia. He also introduced a bank statement showing another $50 payment to the State Bar of Georgia. We find that all three of these payments are for bar association dues and that they are deductible as ordinary and necessary expenses attributable to Longino's business

---

[23]At trial, Longino asserted that his license expenses totaled $7,882.47. In his posttrial brief, he rounded that amount down to $7,882.

**[\*53]** as an attorney.  See <u>Hall v. Commissioner</u>, T.C. Memo. 1996-27, slip op. at 63 (allowing an attorney to deduct his bar dues as a Schedule-C business expense).

With respect to CLE expenses, Longino introduced a credit-card statement showing a $120 payment to an entity called "CLEonline.com".  Taxpayers who are engaged in the practice of law may deduct costs attributable to continuing legal education as a business expense.  <u>See, e.g.</u> <u>Rodriguez v. Commissioner</u>, T.C. Memo. 2012-286, at \*46-\*47; <u>Westby v. Commissioner</u>, slip op. at 38.  We find that Longino's $120 payment was a CLE expense and that Longino may claim it as a deduction.

With respect to the $5,000 payment, Longino provided a copy of a canceled check payable to David Ralston.  Longino testified he had hired Ralston to represent him in a matter related to keeping his law license current.  While legal fees incurred by a taxpayer with respect to his or her trade or business may give rise to a Schedule-C deduction, <u>see, e.g.,</u> <u>Kenton v. Commissioner</u>, T.C. Memo. 2006-13, slip op. at 5-6 ("Generally, legal fees are deductible on a Schedule C only if the matter with respect to which the fees were incurred originated in the taxpayer's trade or business and only if the claim is sufficiently connected to that trade or business."), Longino has not provided sufficient evidence that this $5,000 payment was for services related to his law practice.  Longino offered no evidence,

**[*54]** other than his vague testimony, regarding the nature of the matter with respect to which the fees were incurred. We hold that Longino is not entitled to deduct the $5,000 payment to David Ralston.

With respect to the remaining $2,217 of expenses Longino included in the "licenses" category, the only evidence regarding these expenses is the date of payment, the amount of payment, and the identity of the vendor. Longino has not satisfied his burden of proving that these expenses are ordinary and necessary expenses of his law practice.

### 6. "Client Costs Advanced"

On Schedule C of his original return Longino deducted $17,823 in expenses he characterized as "client costs advanced". Then, on his first and second amended returns, he increased the amount of his claim to $22,368. Finally, at trial and in his posttrial brief, he claimed that the correct amount was actually $19,835.[24] We hold that Longino may not deduct any amount as "client costs advanced".

Longino testified that "client costs advanced" were expenses, such as the cost of transcripts, that he paid on behalf of clients. According to his testimony,

---

[24]At trial Longino asserted that "client costs advanced" totaled $19,834.55. In his posttrial brief, he rounded that amount up to $19,835.

[*55] Longino would pay a client's expense from his own funds and then immediately reimburse himself for the cost of that expense from that client's trust account. Then, at the end of the month, the client would make a payment to restore the balance in the trust account.[25] Longino testified that he reported such payments as fees he received for services. In other words, in calculating his business income, Longino claims he included both fee income and the payments clients made to restore the balance in their trust accounts. Rather than excluding these balance-restoring payments from the calculation, he would first include the amount of the payment in gross income and then, apparently, deduct on his tax return the amount of the expense for which he was reimbursed.

In support of his deductions for client costs advanced, Longino introduced credit-card statements, bank statements, and canceled checks. These documents show that he paid most of the expenses for which he claimed deductions. He did not, however, offer any evidence to support his contention that he included in gross income the reimbursements he received from clients for these expenses.[26]

---

[25]It is unclear from Longino's testimony whether clients made these balance-restoring payments at the end of the month during which Longino incurred the expense or, if different, at the end of the month during which Longino reimbursed himself for the expense from the client's trust fund.

[26]Longino introduced, as Exhibit 60-P, a document titled "Custom

(continued...)

[*56] Longino contends that the $19,835 amount that he seeks to deduct represents client expenses he paid for which he was entitled to receive reimbursement and for which he actually did receive reimbursement. If this characterization is correct, then the correct tax treatment of the advances and reimbursements is as follows:

(1)     the advances are not deductible by Longino because they are in the nature of loans, see Hearn v. Commissioner, 36 T.C. 672, 674 (1961), aff'd, 309 F.2d 431 (9th Cir. 1962); Humphrey, Farrington & McClain, P.C. v. Commissioner, T.C. Memo. 2013-23, at *26; and

(2)     the reimbursements are not includable in Longino's income because they are repayments of loans, see Fed. Home Loan Mortg. Corp. v. Commissioner, 125 T.C. 248, 269 n.18 (2005) (quoting Commissioner v. Tufts, 461 U.S. 300, 307 (1983)).

---

[26](...continued)
Transaction Detail Report". It covers the period from July 5 through December 29, 2006. According to Longino, it is an accurate record of all the services for which he billed his clients during this period. This document includes items characterized as "Cash paid out for client". Although Longino did not offer any testimony as to the significance of any of the items in this document, these entries appear to reflect Longino's practice of billing his clients for reimbursement of expenses Longino incurred on their behalf. While we find this document does show that Longino was reimbursed by clients, we do not find that it shows he included those reimbursements in the gross income of his business.

**[*57]** However, Longino seems to claim that he erroneously included the $19,835 of reimbursements in gross income, and at the same time, that he reported that same $19,835 amount as a deduction, characterizing it as "client costs advanced". To correct this tax reporting, Longino's gross income should arguably be reduced to eliminate the $19,835 of reimbursements that he supposedly reported as gross income. However, as a matter of fact, we cannot conclude that Longino included the reimbursements in his reported gross income. Therefore, we cannot redetermine his deficiency on those grounds.

As stated above, Longino would not be entitled to deduct the amounts he characterized as "client costs advanced" if, as he contends, he was entitled to reimbursement from his clients. However, even if Longino was not entitled to reimbursement, the expenses would still not be deductible because there is insufficient proof that they were related to Longino's law practice. Many of the expenses appear to have been paid to legally related vendors and entities. However, Longino was personally involved in a number of legal disputes during 2006, including an ongoing criminal proceeding. In addition, he handled paperwork for the trust and other entities owned or controlled by the trust. Thus, the mere fact that a payment was made by Longino to a vendor in the legal field does not mean that the payment was related to Longino's law practice.

[*58] Additionally, some of the expenses Longino attempts to deduct as "client costs advanced" are demonstrably unrelated to Longino's law practice.[27] While we believe that some portion of these expenses does relate to Longino's legal practice, Longino failed to provide evidence linking the expenses evidenced by credit card or bank statements with any particular client or matter. Therefore, we have no basis even to estimate what portion of these expenses would be deductible business expenses.

For these reasons, Longino may not deduct any of the amounts he characterized as "client costs advanced".

### 7. Postage

On Schedule C of his original return and both amended returns, Longino claimed deductions for $2,079 in postage expenses. Then at trial and in his posttrial brief he claimed that he incurred deductible postage expenses of only $1,212.[28] Longino provided credit-card statements and bank statements showing

---

[27]In calculating the amount of his deduction for client costs advanced, Longino erroneously included the cost of renewing his former fiance's passport. He also included a $600 payment to Ridgeline Surveying, which he testified that he made on behalf of the trust for surveying work unrelated to his legal practice and for which he seeks a domestic-production-activities deduction.

[28]At trial Longino asserted that his deductible postage expenses totaled $1,211.52. In his posttrial brief, he rounded that amount up to $1,212.

[*59] that he incurred some portion of the amount of postage expenses he seeks to deduct. However, he provided no evidence demonstrating that any of these postage expenses were incurred in connection with his legal practice. Furthermore, there is insufficient evidence for the Court to estimate the amount of deductible postage expenses pursuant to the Cohan rule. Therefore, we hold that Longino is not entitled to a deduction for any amounts that he characterized as postage expenses.

8. Office Expenses

Finally, Longino claimed a $15,107 deduction for office expenses on Schedule C of his original return. He also made the same claim on his first and second amended returns. At trial and in his brief, he reduced his claim to $14,301.[29] We hold that Longino is not entitled to deduct any of the amounts he characterized as office expenses.

Longino testified that the office expense category consisted of costs for office supplies, costs for copying, and other expenses that were related to his law practice but that were not billed to clients. He introduced credit-card statements, bank statements, and canceled checks evidencing that payments were made to a

---

[29]At trial, Longino asserted that his deductible office expenses totaled $14,300.54. In his posttrial brief, he rounded that amount up to $14,301.

[*60] wide variety of vendors on various dates and in various amounts. However, nothing in the record demonstrates that the purchases were for products or services related to Longino's law practice.[30]

We hold that Longino may not deduct any amount of expenses that he characterized as office expenses.

F.  Tuition-and-Fee Expenses

Longino claimed a $2,000 deduction on line 35 of his original return. On his first amended return, he reduced the amount to $1,651. On his second amended return, he increased the amount to $4,000. As discussed supra pp. 10-11, line 35 is used by taxpayers to claim two types of deductions:  tuition and fees, and domestic production activities. Considering the record in its entirety, we conclude that the $2,000 amount claimed on line 35 of Longino's original return

---

[30]For some of the payments that he characterizes as office expenses, Longino placed the handwritten notation "MO" on the relevant line of the credit-card statements. There is no evidence of what the notation meant, other than that it stands for "miscellaneous office". Even assuming that the "MO" abbreviation was meant by Longino to indicate payments he considered to be related to his law practice, the notation would be insufficient evidence to convince us that the payments were so related. First, there are no receipts or other evidence of what was purchased. Second, we do not believe Longino would have been a reliable judge of what expenses were related to his law practice. Third, we believe that Longino made the "MO" notations long after the payments were made. For these reasons, we do not find the notations persuasive evidence that the payments were related to Longino's law practice.

[*61] corresponded to a claim for a tuition-and-fees deduction only, the $1,651 amount claimed on line 35 of his first amended return corresponded to a claim for a tuition-and-fees deduction only, and the $4,000 amount claimed on line 35 of his second amended return corresponded to a claim for both a tuition-and-fees deduction and a domestic-production-activities deduction. (We discuss Longino's entitlement to a domestic-production-activities deduction infra pp. 62-64.) At trial, Longino testified that he incurred costs of "slightly less than $2,000" for his son John's tuition at Kennesaw State University. Then, finally, in his posttrial brief, Longino asserts that he is entitled to a tuition-and-fees deduction of $1,618. We find that he is not entitled to deduct any amount for tuition and fees.

Section 222(a) allows a taxpayer to deduct "qualified tuition and related expenses" incurred during the taxable year. "Qualified tuition and related expenses" includes tuition and fees paid by a taxpayer on behalf of a dependent. See secs. 25A(f)(1)(A)(iii), 222(d)(1). Longino introduced university records showing that a $25 application fee and $1,651 in tuition and related fees was paid with respect to his son's attendance at Kennesaw State University during 2006. The records do not show who paid the fees. Although Longino testified vaguely that he incurred the fee expenses, he did not explain how he made the payments. His credit-card and bank statements for the year did not reflect any payments that

**[\*62]** correspond in amount and date to the information about the fee payments in the university records. Under these circumstances, Longino has not satisfied his burden of proving that he is entitled to a deduction for tuition and fees.

G.    Domestic-Production-Activities Deduction

On line 35 of his second amended return, Longino claimed a domestic-production-activities deduction. As we noted supra pp. 12-13, Longino did not attach a Form 8903 to this return, making it impossible for the Court to determine what portion of the $4,000 amount claimed on line 35 was attributable to a deduction for domestic production activities. However, in his posttrial brief, Longino asserts that he is entitled to a domestic-production-activities deduction of $5,710. The IRS argues that, because Longino had no qualified-production-activities income during 2006, he is not entitled to a domestic-production-activities deduction.[31] We agree.

_____

[31]The notice of deficiency did not address Longino's entitlement to a domestic-production-activities deduction because the notice of deficiency was addressed to Longino's original return, which did not claim a domestic-production-activities deduction. The parties did not discuss Longino's entitlement to the deduction in their pleadings. However, they discussed the issue in their pre-trial memoranda, at trial, and in their posttrial briefs. In the light of this procedural history, we find that Longino's entitlement to a domestic-production-activities deduction was an issue tried by the consent of the parties. See Rule 41(b)(1).

[*63] For tax year 2006, section 199(a) allows a taxpayer to deduct an amount equal to 3% of the taxpayer's qualified-production-activities income for the year. The amount of the deduction cannot exceed 3% of the taxpayer's taxable income for the year. See sec. 199(a). For the purposes of this section, "qualified production activities income" means the excess of the taxpayer's domestic-production gross receipts over the cost of goods sold and other expenses properly allocable to such gross receipts. Sec. 199(c)(1). Section 199(c)(4)(A) defines "domestic production gross receipts" as "the gross receipts of the taxpayer which are derived from--

> (i) any lease, rental, license, sale, exchange, or disposition of--

>> (I) qualifying production property which was manufactured, produced, grown, or extracted by the taxpayer in whole or in significant part within the United States,

>> (II) any qualified film produced by the taxpayer, or

>> (III) electricity, natural gas, or potable water produced by the taxpayer in the United States,

> (ii) in the case of a taxpayer engaged in the active conduct of a construction trade or business, construction of real property performed in the United States by the taxpayer in the ordinary course of such trade or business, or

> (iii) in the case of a taxpayer engaged in the active conduct of an engineering or architectural services trade or

[*64] business, engineering or architectural services performed in the United
States by the taxpayer in the ordinary course of such trade
or business with respect to the construction of real property in the
United States.

The deduction Longino claims is equal to the amount of grading and surveying expenses he claims that he incurred with respect to a property in Pickens County, Georgia. Longino testified that the Pickens County property was held[32] for the production of timber, but that no timber was harvested or sold during 2006. Thus, the Pickens County property did not generate any gross receipts. Because the property did not generate any gross receipts, it could not have given rise to any domestic-production gross receipts or qualified-production-activities income. <u>See</u> sec. 199(c)(4)(A) (defining "domestic production gross receipts); sec. 199(c)(1) (defining "qualified production activities income"). Longino has not identified any other activities which gave rise to qualified production activities income for 2006. Therefore, we hold that he had no qualified production activities income for 2006 and that the amount of his allowable domestic-production-activities deduction for that year is zero.

---

[32]As we noted <u>supra</u> pp. 7-8, Longino is not the owner of the property. It is owned by PPP Properties Development, LLC, an entity controlled by the trust.

[*65] III.     Penalties and Interest

A.     Section-6662(a) Accuracy-Related Penalty

In its notice of deficiency the IRS determined that Longino was liable for a section-6662(a) accuracy-related penalty of $7,951.40.  The IRS contends that Longino is liable for that penalty because his underpayment of tax for 2006 was due either to a substantial understatement of income tax or to negligence or disregard of rules and regulations.  We find that he is liable for the penalty.

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment attributable to (1) a substantial understatement of income tax or (2) negligence or disregard of rules and regulations.  In general, an understatement of income tax is the amount of tax required to be shown on the return less the amount of tax actually shown on the return.  See sec. 6662(d)(2)(A); sec. 1.6662-4(b)(2), Income Tax Regs.  An understatement is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.  An understatement is attributable to negligence if the taxpayer did not make a reasonable attempt to comply with applicable tax laws or failed to exercise reasonable and ordinary care in the preparation of a tax return.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income

**[*66]** Tax Regs. Negligence also includes a failure to maintain adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

The section-6662(a) accuracy-related penalty does not apply to any portion of an underpayment with respect to which the taxpayer had reasonable cause and acted in good faith. See sec. 6664(c)(1). Whether the taxpayer acted with reasonable cause and in good faith is determined on a case-by-case basis, taking into account all relevant facts and circumstances, including the experience, knowledge, and education of the taxpayer. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to properly determine his or her tax liability. Id.

Pursuant to section 7491(c), the IRS bears the burden of production with respect to penalties. In order to meet this burden, the IRS must come forward with sufficient evidence showing that it is appropriate to impose a particular penalty. See Higbee v. Commissioner, 116 T.C. at 446. Once the IRS has satisfied its burden of production, the taxpayer then bears the burden of persuading the Court that the penalty is inappropriate because, for example, the taxpayer acted with reasonable cause and in good faith. See Rule 142(a)(1); Higbee v. Commissioner, 116 T.C. at 446-447.

[*67] We first consider the effect, if any, of Longino's two amended returns on the amount of his underpayment for tax year 2006. For the purposes of section 6662, an underpayment is generally defined as the amount of income tax owed by the taxpayer for a given tax year less the amount of tax shown due on that taxpayer's return. See sec. 1.6664-2(a), Income Tax Regs. The amount of tax shown due on a taxpayer's return also includes amounts shown as additional tax on a qualified amended return. See sec. 1.6664-2(c)(2), Income Tax Regs. As relevant here, a qualified amended return is an amended return filed after the due date for the return but before the taxpayer is first contacted by the IRS concerning any examination with respect to the return. See sec. 1.6664-2(c)(3)(i)(A), Income Tax Regs. Longino filed two amended returns in addition to his original return. His first amended return was filed on or about October 17, 2007, and his second amended return was filed on or about January 6, 2009. He was first contacted by the IRS concerning his 2006 income-tax return by letter dated March 16, 2009. Because both amended returns were filed after the due date of the original return and before Longino was first contacted by the IRS, both amended returns are qualified amended returns for the purposes of calculating the amount of Longino's 2006 underpayment. However, Longino did not report any additional amounts of tax on

[*68] either amended return.[33]  Therefore, the amount of his underpayment should be calculated by reference to the amount of tax Longino reported as due on his original return.

We turn now to whether the underpayment is due to negligence.  The IRS has met its burden of production with respect to its negligence theory.  Longino failed to exercise reasonable care in the preparation of his return.  He filed three different returns for tax year 2006, and the amounts of the deductions claimed varied across these returns.  Then, at trial and in his posttrial brief, he asserted yet other figures.  Furthermore, Longino failed to substantiate most of the disputed deductions claimed on any of his returns by keeping adequate records as required by section 6001.  He failed to maintain records related to the business use of his vehicles or to clearly distinguish between business and personal expenses.  We find that Longino's conduct constitutes negligence as defined in section 6662(c).  See Crocker v. Commissioner, 92 T.C. 899, 917 (1989).  He will be liable for the accuracy-related penalty unless he can demonstrate that he acted with reasonable cause and in good faith.

---

[33]On his original return, Longino reported total tax due of $12,969.  On his first amended return, he reported total tax due of $12,326, and on his second amended return he reported total tax due of $12,175.

**[*69]** Longino has not put forward any evidence showing that he acted with reasonable cause and in good faith in preparing his 2006 income-tax return. He is a licensed attorney who has been practicing law for decades, yet he failed to comply with established law governing the deduction and substantiation of business and other expenses. He did eventually employ a C.P.A., but only to prepare his second amended return in January 2009. Furthermore, while reliance on a professional tax adviser may be evidence of reasonable cause, the taxpayer must prove the following: (1) that the adviser was a competent professional, (2) that the taxpayer provided necessary and accurate information to the adviser, and (3) that the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). Longino has not met these requirements. Consequently, we find that Longino was negligent in preparing his 2006 return, that he did not act with reasonable cause and in good faith with respect to that return, and that he is liable for a section-6662(a) accuracy-related penalty for 2006

Because we find that Longino is liable for the penalty due to negligence, we need not address the IRS's substantial understatement theory.

**[*70]** B.     <u>The $5,000 Payment and Alleged Overpayments From Other Tax Years</u>

Longino argues that a refund check in the amount of $5,326.25 that he sent to the IRS with a letter dated February 17, 2011 (after the filing of the petition in this case), requesting that it be applied to his 2006 income tax account, when combined with overpayments from other tax years, was sufficient to eliminate his 2006 deficiency in tax, as well as any liability for penalties or interest.  The Tax Court is a court of limited jurisdiction that may only be exercised to the extent authorized by statute.  <u>Naftel v. Commissioner</u>, 85 T.C. 527, 529 (1985).  Section 6214(a) authorizes us to redetermine deficiencies, as defined by section 6211(a).  <u>See</u> <u>Bocock v. Commissioner</u>, 127 T.C. 178, 181 (2006).  This Court's jurisdiction to redetermine a deficiency entails a redetermination of the correct amount of the deficiency as of the date a decision is entered by the Court.  <u>Ciciora v. Commissioner</u>, T.C. Memo. 2003-202, slip op. at 6-7.

In relevant part, section 6211(a) defines the term "deficiency" as the amount by which the tax imposed by the Internal Revenue Code exceeds the sum of (1) the amount shown as tax by the taxpayer on his return, plus (2) "amounts previously assessed (or collected without assessment) as a deficiency".  Thus the amount of a deficiency, whether at the time a notice of deficiency is issued, or at the time a

[*71] decision is entered by this Court, turns not on what payments have been applied to an account, but rather on what assessments have been made with respect to that account. See sec. 301.6211-1(b), Proced. & Admin. Regs. ("Payments on account of estimated income tax, like other payments of tax by the taxpayer, shall likewise be disregarded in the determination of a deficiency."); see also Burke v. Commissioner, T.C. Memo. 2009-282, slip op. at 20-21 n.11 ("[O]nce the tax actually due has all been assessed, there is no more deficiency--whether or not the tax due has been paid."); Mackey v. Commissioner, T.C. Memo. 2004-70, slip op. at 9 (holding that remittances made before issuance of notice of deficiency without corresponding assessments did not affect amount of deficiency); Hillenbrand v. Commissioner, T.C. Memo. 2002-303, slip op. at 11 ("Payments are not included in determining or redetermining a deficiency, simply because they do not fit within the definition of a deficiency.").

Although respondent's counsel indicated at trial that the IRS would apply the refund check to Longino's 2006 income tax account, we do not know whether that application has been or will be accompanied by an assessment in a corresponding amount.[34] We also do not know with certainty and specificity what, if any,

---

[34]Such an assessment during the course of this proceeding would be specifically authorized by sec. 6213(b)(4). See Hillenbrand v. Commissioner, T.C.

(continued...)

**[\*72]** overpayments from other tax years have been applied to Longino's 2006

income tax account, or whether the IRS made assessments in connection with any

such applications.[35] Therefore at this time we do not resolve the merits of Longino's

argument. We will return to it to the extent necessary in the event the parties are not

in agreement as to the amount to be included in the decision to be entered. See Rule

155.

In reaching our decision, we have considered all arguments made by the

parties. Contentions not addressed herein we find to be meritless, irrelevant, or

moot.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[34](...continued)
Memo. 2002-303.

[35]The account transcripts in evidence are dated May 13, 2011, and so do not
reflect any transactions after that date.