T.C. Memo. 2008-293

UNITED STATES TAX COURT

WILLIAM MAGDALIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7880-07.                    Filed December 23, 2008.

        R determined deficiencies in P's Federal income
tax for 2004 and 2005.  After P's concessions, the sole
issue is whether P is entitled to deductions under sec.
213, I.R.C., for expenses incurred in fathering
children through unrelated gestational carriers via the
in vitro fertilization of an anonymous donor's eggs
using P's sperm.

        <u>Held</u>:  Because there is no causal relationship
between an underlying medical condition or defect and
P's expenses, and because the expenses at issue were
not incurred for the purpose of affecting a structure
or function of P's body, P is not entitled to
deductions for those expenses and is liable for the
deficiencies.


William Magdalin, pro se.

<u>Daniel P. Ryan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case, which involves a petition for redetermination of deficiencies for petitioner's 2004 and 2005 tax years, has been submitted for decision without trial.  See Rule 122.[1]  In the notice of deficiency, respondent disallowed deductions for medical expenses and charitable contributions petitioner claimed for 2004 and 2005.  Respondent also increased the amount of taxable dividends petitioner reported for 2005.  Petitioner concedes the charitable contribution and dividend issues.  He challenges only respondent's disallowance of the deductions for medical expenses.

FINDINGS OF FACT

Petitioner is a medical doctor licensed to practice medicine in Massachusetts.  At all relevant times, his sperm count and motility were found to be within normal limits.  He has twin sons from a marriage to his former spouse, Deborah Magdalin.  The twins were born through natural processes and without the use of in vitro fertilization (IVF).

In July 2004 petitioner entered into an Anonymous Egg Donor Agreement under which an anonymous donor was to donate eggs to be fertilized with petitioner's sperm and transferred to a

---

[1]Section references are to the Internal Revenue Code of 1986, as amended and in effect for the tax years at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

gestational carrier using the IVF process.[2]  That same month, petitioner also entered into a Gestational Carrier Agreement in which a woman (the first carrier) agreed to become impregnated through the IVF embryo transfer process with the embryo created from the anonymous donor's egg and petitioner's sperm and to bear a child for petitioner.  The first carrier gave birth to a child on September 17, 2005.

On November 18, 2005, petitioner entered into a similar Gestational Carrier Agreement with another woman (the second carrier).  The second carrier gave birth to a child on August 12, 2006.  The donor was not the spouse or dependent of petitioner.  Nor was either of the carriers.  Both IVF procedures occurred at the Reproduction Science Center (IVF clinic) in Lexington, Massachusetts.

Petitioner paid the following expenses in 2004 relating to the aforementioned agreements:  (1) $3,500 for petitioner's legal fees relating to the first donation cycle under the Anonymous Egg Donor Agreement; (2) $500 for the donor's legal fees relating to the Anonymous Egg Donor Agreement; (3) $10,750 for the donor's fees and expenses; (4) $8,000 for the first carrier's fees and expenses; (5) $25,400 to the IVF clinic; and (6) $2,815 for prescription drugs for the first carrier.

---

[2]That agreement was amended in Dec. 2004 "in connection with the arrangements for a second fresh egg donation cycle".

In 2005 petitioner paid the following relevant expenses: (1) $750 for petitioner's legal fees relating to the second donation cycle under the Anonymous Egg Donor Agreement; (2) $17,000 for the first carrier's fees and expenses; (3) $14,270 for petitioner's legal fees relating to the Gestational Carrier Agreement with the second carrier; (4) $1,000 for the second carrier's legal fees relating to the Gestational Carrier Agreement; (5) $2,615.10 to the IVF clinic; (6) $300 to Lawrence General Hospital for costs relating to the first carrier's stay during delivery of the first child; (7) $1,181.25 for the first carrier's legal fees relating to legal proceedings concerning a dispute over the issuance of the first child's birth certificate; and (8) $838 for prescription drugs for both carriers. There is no evidence that petitioner was compensated for any of those expenses by insurance or otherwise.

Petitioner filed his 2004 and 2005 Federal income tax returns on time. On Schedules A, Itemized Deductions, included with those returns he deducted medical expenses of $34,050 for 2004 and $28,230 for 2005.[3] On March 22, 2007, respondent issued petitioner a notice of deficiency for his 2004 and 2005 tax years. Therein, respondent disallowed petitioner's claimed

---

[3]The total amounts of his claimed medical expenses were $52,310 in 2004 and $43,593 in 2005. The amounts of the deductions were less because a taxpayer can only deduct medical expenses to the extent that they exceed 7.5 percent of the taxpayer's adjusted gross income for the year. Sec. 213(a).

medical expense deductions in their entirety. On April 3, 2007, petitioner, who then resided in Massachusetts, filed a timely petition with this Court.

OPINION

## I. Deductions for Medical Expenses[4]

Section 213(a) allows for the deduction of paid expenses "not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * * to the extent that such expenses exceed 7.5 percent of adjusted gross income." While Congress has indicated an intent, once section 213 applies, to broadly define medical care, see S. Rept. 1631, 77th Cong., 2d Sess. 95-96 (1942), 1942-2 C.B. 504, 576, we have characterized section 213 as carving out "a limited exception" to the general rule in section 262 that prohibits the deduction of personal, living, or family expenses. Jacobs v. Commissioner, 62 T.C. 813, 818 (1974); see Gerstacker v. Commissioner, 414 F.2d 448, 450 (6th Cir. 1969), revg. and remanding 49 T.C. 522 (1968). Consequently, the medical expense deduction has been narrowly construed for many years, as the Court noted more than 40 years

[4]The taxpayer bears the burden of proving entitlement to the claimed deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976). Although sec. 7491(a) may shift the burden of proof to the Commissioner in specified circumstances, we need not decide which party bears the burden of proof because the outcome in this case does not depend on the burden of proof. Knudsen v. Commissioner, 131 T.C. __, __ (2008) (slip op. at 8).

ago in Atkinson v. Commissioner, 44 T.C. 39, 49 (1965).  The deductibility of the expenses at issue hinges on whether they were paid for petitioner's medical care.  If so, they are deductible medical expenses under section 213.  If not, they are nondeductible personal expenses under section 262.

The term "medical care" includes amounts paid "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body".  Sec. 213(d)(1)(A).  The regulations provide that "Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness."  Sec. 1.213-1(e)(1)(ii), Income Tax Regs.

We have interpreted the statute as requiring a causal relationship in the form of a "but for" test between a medical condition and the expenditures incurred in treating that condition.  See Jacobs v. Commissioner, supra at 818 (noting that "the payment for which a deduction is claimed must be for goods or services directly or proximately related to the diagnosis, cure, mitigation, treatment, or prevention of the disease or illness"); Havey v. Commissioner, 12 T.C. 409, 413 (1949) ("An incidental benefit is not enough.").  The "but for" test requires petitioner to prove (1) "that the expenditures were an essential

element of the treatment" and (2) "that they would not have otherwise been incurred for nonmedical reasons."  Jacobs v. Commissioner, supra at 819.

It is also noteworthy that section 213(d)(1)(A), which is not a model of clarity, is phrased disjunctively--it allows for the deduction of any expenses paid "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body". Sec. 213(d)(1)(A) (emphasis added); see Dickie v. Commissioner, T.C. Memo. 1999-138 ("The deductibility of medical care payments under section 213 is not strictly limited to traditional medical procedures, but it includes payments made for the purpose of affecting any structure or function of the body.").  Although the phrase "for the purpose of affecting any structure or function of the body" was historically interpreted by the Internal Revenue Service and the Court to allow taxpayers to deduct the costs of a wide array of cosmetic procedures, Congress felt this was too liberal a tax deduction because it resulted from a personal expense and not a medical one.  As a consequence, in 1990 Congress restricted taxpayers' ability to do so.[5]

---

[5]For example, the Internal Revenue Service used to permit a medical expense deduction for a facelift, performed solely to improve the taxpayer's appearance, because its purpose was to affect a structure of the taxpayer's body.  See Rev. Rul. 76-332, 1976-2 C.B. 81; see also Mattes v. Commissioner, 77 T.C. 650, 655-656 (1981) (allowing a taxpayer to deduct the cost of a hair
(continued...)

## II. Parties' Contentions

Petitioner argues that it was his civil right to reproduce, that he should have the freedom to choose the method of reproduction, and that it is sex discrimination to allow women but not men to choose how they will reproduce. While he correctly acknowledges that Internal Revenue Service private letter rulings are "not legal precedent", he refers to Priv. Ltr. Rul. 2003-18-017 (Jan. 9, 2003) to show that "the expenses for egg donor, medical and legal costs are deductible medical expenses".

"Although respondent believes that amounts paid for procedures to mitigate infertility may qualify as deductible medical care", respondent argues that "Petitioner had no physical or mental defect or illness which prohibited him from procreating naturally", as he in fact has, and that "the procedures were not medically indicated."[6] Respondent's position is that the

---

[5](...continued)
transplantation procedure undertaken by the taxpayer for cosmetic reasons). But Congress narrowed the range of deductible procedures by enacting the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 11342(a), 104 Stat. 1388-471, which added sec. 213(d)(9). Sec. 213(d)(9) provides that cosmetic surgery or similar procedures are nondeductible personal expenses "unless the surgery or procedure is necessary to ameliorate a deformity arising from, or directly related to, a congenital abnormality, a personal injury resulting from an accident or trauma, or disfiguring disease."

[6]Respondent also argues that "the expenses paid by petitioner were not for the purpose of affecting any structure or

(continued...)

expenses at issue are nondeductible under section 262 because "Petitioner's choice to undertake these procedures was an entirely personal/nonmedical decision."

III.  The Expenses at Issue Are Nondeductible Personal Expenses

The expenses at issue were not paid for medical care under the first portion of section 213(d)(1)(A) because the requisite causal relationship is absent.  None of the expenses at issue was "incurred primarily for the prevention or alleviation of a physical or mental defect or illness."  Sec. 1.213-1(e)(1)(ii), Income Tax Regs.  In other words, petitioner had no medical condition or defect, such as, for example, infertility, that required treatment or mitigation through IVF procedures.  We therefore need not answer lurking questions as to whether (and, if so, to what extent) expenditures for IVF procedures and associated costs (e.g., a taxpayer's legal fees and fees paid to, or on behalf of, a surrogate or gestational carrier) would be deductible in the presence of an underlying medical condition.[7]

---

[6](...continued)
function of petitioner's male body" and that "the procedures at issue only affected the structures or functions of the bodies of the unrelated surrogate mothers."  In addition, respondent makes the unexplained assertion that respondent "does not believe that procreation is a covered function of petitioner's male body within the meaning of section 213(d)(1)".

[7]Under sec. 6110(k)(3) private letter rulings (PLRs) lack precedential status.  Nevertheless, "such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws."  Hanover

(continued...)

See *supra* note 6.  We leave such questions for another day.
Further, petitioner cannot deduct those expenses under the second
portion of the statute because they did not affect a structure or
function of his body.[8]

---

[7](...continued)
Bank v. Commissioner, 369 U.S. 672, 686 (1962); see Transco
Exploration Co. v. Commissioner, 949 F.2d 837, 840 (5th Cir.
1992), affg. 95 T.C. 373 (1990).  In the PLR petitioner refers
to, the Internal Revenue Service (IRS) concluded that egg donor
fees and expenses, including legal fees for preparing a contract
between the taxpayer and the egg donor, were deductible medical
expenses for purposes of sec. 213.  Although petitioner raises
that PLR in his brief, there are important differences between
his situation and that of the taxpayer requesting the PLR.  The
requesting taxpayer had "unsuccessfully undergone repeated
assisted reproductive technology procedures to enable * * * [her]
to conceive a child using * * * [her] own eggs."  Priv. Ltr. Rul.
2003-18-017 (Jan. 9, 2003).  And, the procedures were going to be
performed "in order to enable * * * [her] to obtain a donated egg
for implantation into * * * [her] body."  Id.

In addition, although IRS publications are not authoritative
sources of Federal tax law, we note that IRS Publication 502,
Medical and Dental Expenses (2008), provides that procedures such
as in vitro fertilization are deductible under sec. 213 if such
expenses are incurred "to overcome an inability to have
children."

[8]Where a medical procedure affects a structure or function
of the taxpayer's body, the cost of such a procedure may be a
deductible medical expense unless proscribed by sec. 213(d)(9).
See *supra* note 5.  A vasectomy is an example of a noncosmetic
operation that the Commissioner has determined is deductible
because it affects the structure of a taxpayer's body.  See Rev.
Rul. 73-201, 1973-1 C.B. 140.

The dictionary defines "affect" as "to produce an effect
upon" or "to produce a material influence upon or alteration in".
Merriam-Webster's Collegiate Dictionary 21 (11th ed. 2003).
Petitioner's bodily functions and structures were not "affected"
by the IVF processes--they remained the same before and after
those processes.

Although petitioner at times attempts to frame the deductibility of the relevant expenses as an issue of constitutional dimensions, under the facts and circumstances of his case, it does not rise to that level. Petitioner's gender, marital status, and sexual orientation do not bear on whether he can deduct the expenses at issue. He cannot deduct those expenses because he has no medical condition or defect to which those expenses relate and because they did not affect a structure or function of his body. Expenses incurred in the absence of the requisite underlying medical condition or defect and that do not affect a structure or function of the taxpayer's body are nondeductible personal expenses within the meaning of section 262.

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>
<u>for respondent</u>.