**Joseph F. MORRISSEY, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**CASE NO. 8:15–cv–2736–T–26AEP**

United States District Court,
M.D. Florida,
**Tampa Division.**

Signed 12/22/2016

David Paul Burke, Gary Lee Sasso, Scott D. Feather, Carlton Fields Jorden Burt, PA, Tampa, FL, Richard Donald Euliss, Carlton Fields Jorden Burt, PA, Washington, DC, for Plaintiff.

Michael W. May, Steven C. Woodliff, Laura M. Conner, US Department of Justice—Tax Division, Washington, DC, for Defendant.

## ORDER

RICHARD A. LAZZARA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** comes before the Court on Plaintiff Joseph F. Morrissey's Motion

for Summary Judgment (Dkt. 19), Defendant United States of America's Memorandum of Law in Opposition (Dkt. 22), Defendant's cross Motion for Summary Judgment (Dkt. 23) and Plaintiff's Memorandum of Law in Opposition (Dkt. 28).

### Background

Plaintiff, Joseph F. Morrissey, a homosexual male, brings this lawsuit against Defendant, United States of America, seeking a tax refund from the Internal Revenue Service ("IRS") in the amount of $9,539 for the year 2011 based on an expense deduction in the amount of approximately $36,000 for medical care—*in vitro* fertilization ("IVF")—that he claimed under 26 U.S.C. § 213(a) of the Internal Revenue Code and was denied. Section 213(a) permits a taxpayer to deduct expenses paid "for the medical care of the taxpayer, his spouse, or a dependent." The IRS disallowed the deduction on grounds that the expenses Plaintiff paid were not for the medical care of any individuals covered by the statute. In the two-count Complaint, Plaintiff argues in count one that § 213(a) plainly authorizes the requested deduction. In count two he asserts that disallowing such a deduction amounts to a violation of his rights to due process and equal protection secured by the Fifth Amendment to the United States Constitution because heterosexuals are allowed the deduction of medical expenses incurred in conceiving a child.

Plaintiff seeks the entry of final summary judgment in the amount of $9,539, plus interest and costs, an injunction preventing Defendant from continuing to discriminate against Plaintiff, and a declaration that Defendant's application of the statute was unconstitutional. Defendant, in turn, seeks the entry of final summary judgment in its favor, arguing that the IRS acted properly under the Internal Revenue Code in denying the requested deduction and that there is no basis for entry of an injunction or declaratory judgment.

### Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Having carefully considered all of the parties' submissions, the Court finds there are no genuine issues which would preclude the entry of final summary judgment in favor of Defendant United States of America.

### Statement of Facts

The parties have stipulated to the material facts of this case. Plaintiff Joseph F. Morrissey is a homosexual male. (Stipulation of Undisputed Facts, Dkt. 19, Ex. 1, ¶ 1.) Though not medically infertile, he cannot conceive a child by himself, and he is incapable of conceiving a child with his chosen life partner who is also male. (Id. at ¶¶ 4–5.) In 2010, Plaintiff and his partner decided to attempt to have a child through an IVF process which involved the use of an egg donor and a gestational surrogate who were not related to Plaintiff. (Id. at ¶ 6.) In 2011, Plaintiff paid a total of $56,853.01 related to that IVF process. (Id. at ¶ 16.) He also paid $1,248 in medical care expenses in 2011 which were not related to the IVF process. (Id. at ¶ 17.) The surrogate with whom Plaintiff contracted in 2011 did not carry a child to term. (Morrissey Declaration, Dkt. 19, Ex. 2, ¶ 15.)

Approximately $55,300 of the aforementioned expenses were for the medical care, identification and retention, compensation, or reimbursement of expenses incurred by the unrelated egg donor(s) and potential surrogate(s) in the IVF process. The expenses for medical care of the egg donors and surrogates included $330 paid for a potential surrogate's initial consultation, $521 for lab tests performed on a potential surrogate, $9,500 for egg donor services and testing, $400 for anesthesia services to be performed on the egg donor and/or surrogate(s), $1,575 for procedures to be performed on eggs retrieved from egg donor(s), and $3,700 for medications. (Stipulation of Undisputed Facts, Dkt. 19, Ex. 1, ¶¶ 7–10, 14–15.) Plaintiff also paid the agency that coordinated the egg donors' participation in the IVF process for items that were not strictly medical in nature, such as $9,500 in coordination fees for identifying and facilitating the retention of the egg donors and $2,100 in fees for coordination of the donors' psychological assessment, limited background check, legal representation, an insurance policy, and management of various trust account and tax forms. (Id. at ¶ 13.) Plaintiff paid $12,000 in compensation to the egg donors. (Id.) Finally, Plaintiff paid $12,000 in 2011 to fund an expense account to reimburse any egg donor for her travel to Tampa and other expenses. (Id. at ¶ 13.)

On October 15, 2012, Plaintiff filed his Form 1040 U.S. Individual Income Tax Return for the year 2011 ("Original Return") with the IRS. (Id. at ¶ 18.) Therein, he itemized the deductions totaling $34,600, but claimed no deductions for medical expenses. (Id.) Plaintiff paid the total tax of $22,449 shown due on the Original Return. (Id. at ¶ 19.) On or about December 17, 2012, Plaintiff filed a Form 1040X Amended U.S. Individual Income Tax Return for 2011 ("Amended Return"). (Id. at ¶ 20.) The Amended Return claimed a refund of $9,539 attributable solely to the claimed medical expense deduction. (Id. at ¶ 22.) The IRS disallowed the claimed deduction and did not pay any refund to Plaintiff. Plaintiff then pursued an internal IRS appeal and, after receiving an adverse ruling, filed this lawsuit. (Id. at ¶¶ 22, 31.)

### Discussion

 The United States Supreme Court has established that " 'the burden of clearly showing the right to the claimed deduction is on the taxpayer.' " INDOPCO, Inc. v. Comm'r., 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992) (quoting Interstate Transit Lines v. Comm'r., 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943)). Plaintiff fails to meet his burden. When interpreting a statute (or, in this instance, a section of the Internal Revenue Code) the Court must start with the plain language of the statute. See Warshauer v. Solis, 577 F.3d 1330, 1335 (11th Cir. 2009). Section 213(a) of the Internal Revenue Code allows taxpayers a deduction for "the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent ...." Section 213(d)(1) defines medical care as amounts paid "for the diagnosis, cure, mitigation, treatment, or prevention of disease, *or* for the purpose of affecting any structure or function of the body[.]" (Emphasis added). Under the plain language of § 213, Plaintiff is not allowed the deduction requested.

Defendant correctly argues that the amounts claimed by Plaintiff as a deduction fall outside of the plain language of § 213 in two ways. First, the expenses Plaintiff paid for treatments and procedures performed on third-party egg donors and potential surrogates are not covered by section 213(a), which requires the expenses be paid for the medical care of Plaintiff, his spouse, or dependent. The language of § 213 plainly limits the deduction for medical expenses to amounts paid

for the medical care of the taxpayer, the taxpayer's spouse, or the taxpayer's dependent. Expenses paid for medical procedures performed on other individuals such as third-party egg donors and surrogates cannot be deducted. See Magdalin v. Comm'r, 96 T.C.M. (CCH) 491 (T.C. 2008), aff'd, 2009 WL 5557509 (1st Cir. 2009); see also, INDOPCO, 503 U.S. at 84, 112 S.Ct. 1039 (holding that deductions, as matters of legislative grace, are to be strictly construed and only allowed if clearly within the provisions of the statute which authorizes them).

Second, the expenses at issue were not for diagnosis, cure, mitigation, or treatment of any disease of Plaintiff, his spouse, or dependent, nor did they affect a structure or function of the body of Plaintiff, his spouse, or dependent as required by § 213(d)(1). Plaintiff admits he has no disease to be diagnosed, cured, mitigated, treated, or prevented, but rather claims that as a homosexual man he is effectively infertile. He argues that, as a consequence, the amounts he paid for egg donors and surrogates affected a function of his body, specifically, his reproductive "function." To father a child using IVF, Plaintiff paid to have eggs harvested from third-party donor(s) fertilized with his sperm with the intent to have the resulting embryos implanted in the body of a third-party surrogate who would carry the fetus. As Defendant correctly asserts, although the collection of Plaintiff's sperm undeniably affected the structure and/or function of his body, the process ultimately and necessarily only affected the structure and function of the bodies of the third-party donors or chosen surrogate, who Plaintiff admits were neither a spouse nor dependent. Therefore, Plaintiff simply is not entitled to a deduction for those expense under the plain language of § 213(a).

Plaintiff offers no legal support for his argument that IVF procedures for others affected the function or structure of his body. Instead, he relies on factually distinguishable rulings and cases for the proposition that "both the IRS and the courts have long interpreted Section 213 broadly to include a wide range of expenses ...." (Dkt. 19, p. 6.) With regard to the obesity and weight loss treatment expenses raised by Plaintiff, the IRS determined that expenses paid to treat it as a disease constitutes medical care under § 213; whereas, such expenses paid simply to improve a taxpayer's general health do not. See Rev. Rul. 2002–19 (IRS RRU), 2002–1 C.B. 778–79. As to gender identity disorder treatment, expenses including sex reassignment surgery, are also "medical care" under § 213 because they treat a disease. See O'Donnabhain v. Comm'r, 134 T.C. 34 (T.C. 2010). Expenses for the installation of a swimming pool constituted medical care when its use treated or mitigated a degenerative spinal disorder, but excessive amounts spent for personal, aesthetic reasons, such as hand-cut stone for the walls to enclose the swimming pool, were not. See Ferris v. Comm'r., 582 F.2d 1112 (7th Cir. 1978). Expenses for the installation of an air conditioner to treat the cystic fibrosis suffered by the taxpayer's child was also allowable. See Gerard v. Comm'r, 37 T.C. 826 (1962). Expenses involved in installing elevators in the homes of taxpayers with coronary conditions constituted medical care because they mitigated the disease or prevented recurrence of it. See Berry v. Wiseman, 174 F.Supp. 748 (W.D. Okla. 1958); Post v. United States, 150 F.Supp. 299 (N.D. Ala. 1956). All of these cases are plainly distinguishable from Plaintiff's circumstances because they involved expenses paid for the treatment of disease and were not for individuals other than the taxpayer, taxpayer's spouse, or dependent. Defendant correctly argues

they are not relevant to the issue before the Court of whether the expenses that Plaintiff paid for egg donors and surrogates were for the purpose of affecting his own bodily function.

Plaintiff is infertile because IVF is the only way he can pass on his genetic material to another. But, as Defendant properly contends, the same can be said for an unmarried heterosexual male who desires a child of his own but lacks a suitable female partner—he has no greater ability to procreate than Morrissey. If he does so through IVF, the amounts he pays for the egg donors and surrogates, while necessary to his ability to reproduce, do not affect a structure or function of his body.

Plaintiff attempts to draw a parallel between his circumstances and those when taxpayers pay expenses for kidney or egg donors when the kidney or eggs are to be implanted in the taxpayer's body in order to show otherwise. (Dkt. 19, p. 10.) However, unlike the expenses he seeks to deduct for procedures on the bodies of unrelated egg donors and surrogates, the examples he cites involve medical treatment of the actual taxpayer. See Rev. Rul. 68–452 (IRS RRU), 1968–2 C.B. 111. A donated kidney is necessary for treating the taxpayer's disease and affects the function or structure of the taxpayer's body (either of which satisfies the statutory definition of the phrase "medical care"). Similarly, when a taxpayer who pays to have fertilized eggs of a donor implanted into her body, she is entitled to a deduction under § 213 because the amounts paid indisputably affect the structure and function of the taxpayer's body. See PLR 200318017 (IRS PLR), 2003 WL 2009141 (Jan. 9, 2003). Because the procedures for egg donors and surrogates affected the bodies of

those individuals (and not Plaintiff's body), he is not allowed to deduct the medical expenses he claims under § 213, nor can he deduct legal fees, travel expenses, and donor or surrogate compensation. Regardless of whether those were "incidental" to Plaintiff's participation in the IVF processes or even the eventual birth of his sons, they did not affect the function and structure of his body.

Although Plaintiff characterizes his case as one of first impression, as Defendant explains, Plaintiff's arguments have been rejected in two cases that are on point. First, in Magdalin v. Commissioner, 96 T.C.M. (CCH) 491 (T.C. 2008), the taxpayer, a single male who was not medically infertile, sought to claim a deduction for expenses he paid in an attempt to have children through an IVF process similar to that used by Plaintiff here. The Court concluded that the plaintiff, who had previously fathered twins through a natural process with a former wife, was not entitled to the deduction for IVF expenses since he had no medical condition or defect and the expenses did not affect a structure or function of his body. Id.[1]

In the second case, a single man sought to deduct IVF expenses for a potential gestational carrier who was not his spouse or dependent. There, the court disallowed Mr. Longino's claimed deduction for $4,421 he paid for IVF procedures undergone by his former fiancée. Longino v. Comm'r., 105 T.C.M. (CCH) 1491, at *2, 11 (T.C. 2013), aff'd sub nom., 593 Fed.Appx. 965 (11th Cir. 2014). Plaintiff would have the Court disregard these two cases as "conclusory" or lacking in "analysis or recognition of the relationship between IVF and the taxpayer's reproductive function" (Dkt. 19, p. 13); however, both cases plainly

---

1. The opinion is silent on Dr. Magdalin's sexual orientation, but sexual orientation was immaterial to the Tax Court's holding, which turned on the fact that Dr. Magdalin was unmarried and sought the deduction for expenses involving IVF procedures performed on female individuals who were not his spouse or dependent.

support Defendant's position that expenses for IVF procedures involving individuals other than the taxpayer, his/her spouse, or dependents are not deductible under § 213, regardless of the taxpayer's sexual orientation.

The cases disallowing a tax deduction to adoptive parents for expenses they paid for the birth mother of their adopted child are also consistent with the result the Court reaches in this case. In Kilpatrick v. Comm'r, 68 T.C. 469 (1977), adoptive parents contracted with an adoption agency to pay certain expenses of the birth mother, such as half of an insurance premium, medications, hospital, and physician services and after paying those expenses in the year the child was born, the adoptive parents claimed them all on their joint tax return for that year. The IRS disallowed the expenses for amounts other than those directly attributable to the care of the child and the Tax Court agreed with that determination. Id. at 470–71. The Tax Court reasoned that the taxpayers were not entitled to claim the amounts they sought to deduct because the birth mother was not a dependent of the taxpayers. Id. at 472; see also Hornish v. Comm'r, 37 T.C.M. (CCH) 919 (T.C. 1978).

 While Plaintiff attempts to avoid that result, and distinguish these cases, by alleging that the payments he made for IVF "were all necessary and incidental to the fulfillment of *his own reproductive* function" (Dkt. 1, ¶ 64 (emphasis in original)), that simply is not the case and that position runs contrary to the line of reasoning in all the case law cited. As previously stated, deductions, as a matter of legislative grace, are to be strictly construed and only allowed if clearly within the provisions of the statute which authorizes them. INDOPCO, 503 U.S. at 84, 112 S.Ct. 1039. Plaintiff's requested deduction does not fall clearly within the provisions of § 213 and, therefore, the Court must

reject Plaintiff's expansive, rather than strict, interpretation of the medical expense deduction.

 Turning to Plaintiff's claim for constitutional violations, he argues that the IRS's denial of his claimed deduction for IVF expenses is a violation of his "fundamental rights and deprives him of equal protection of the laws." (Dkt. 1, ¶ 89.) The Equal Protection Clause requires that all persons similarly circumstanced shall be treated alike by governmental decisionmakers. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 818 (11th Cir. 2004). Plaintiff seeks a declaration that the IRS unconstitutionally discriminated against him in its application of the § 213(a) deduction on account of his sexual orientation. Plaintiff's sexual orientation, however, has nothing to do with the disallowance of Plaintiff's requested tax refund. The IRS's ultimate decision to disallow the deduction was not based on anything other than its interpretation of the law, specifically, that under § 213, Plaintiff could not deduct the IVF expenses because those expenses were for persons who were not Plaintiff, his spouse, or his dependent. (Dkt. 23, Ex. 2, p. 3; Ex. 4.)

Section 213 does not permit any taxpayer, regardless of sex, sexual orientation, or gender to deduct the kinds of IVF expenditures Plaintiff claims here. The parties have stipulated that the IRS has interpreted § 213 to deny taxpayers deductions for the kinds of costs associated with surrogacy, without respect to a taxpayer's sexual orientation. (Dkt. 23–1, ¶ 44.) As Defendant correctly points out, a single, heterosexual female who was medically infertile and incapable of carrying a child to term, or who simply chose to have children in the same way as Plaintiff—albeit with the additional need for a third-party sperm donor—would not be able to deduct IVF expenses she paid for treatment of a donor and/or gestational surrogate who was nei-

ther her spouse, or her dependent. Likewise, a heterosexual couple in which the wife was medically infertile and medically incapable of carrying a child to term, or who chose not to carry the child herself, who used a similar method as Plaintiff, would not be entitled to deduct the expenses of contracting with and having the necessary procedures for a third-party gestational carrier, or any egg donor if the donated egg is not implanted in the taxpayer, spouse, or dependent. The same result would hold for a lesbian couple in which neither partner could, or wanted to, carry a child to term and who utilized a third-party surrogate to carry their child.

In denying Plaintiff's deduction, the IRS applied the statute to Plaintiff's case consistently with its approach in other cases. See, e.g., Longino, 105 T.C.M. (CCH) 1491, at *11 (T.C. 2013) (heterosexual male denied deduction under § 213 for medical expenses he paid for IVF procedures on his fiancee). The IRS has also published guidance stating it would deny the deduction for medical and legal expenses of a third-party gestational surrogate without regard to marital status, sex, sexual orientation, or even condition of infertility. See IRS INFO 2002–0291, 2002 WL 31991849 (Dec. 31, 2002).

■■■ In addition to the tax refund, the Plaintiff requests relief in the form of "[a]n injunction against Defendant preventing it from continuing to discriminate against Plaintiff by treating him differently from similarly-situated heterosexual citizens;" and "[a] declaration that the Defendant's application of 26 U.S.C. § 213 to Plaintiff was unconstitutional." (Dkt. 1, ¶¶ B, C.) The Court has already determined that Defendant committed no constitutional vio-

lation in denying Plaintiff's deduction and refund. An additional basis for denying the injunctive relief lies in the fact that the Anti–Injunction Act states that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421.[2] "The manifest purpose of [the Anti–Injunction Act] is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Because Plaintiff is pursuing that remedy of a suit for a refund, the manifest purpose of the Act is fulfilled. As the Supreme Court has said, "[t]he 'decisions of this Court make it unmistakably clear that the constitutional nature of a taxpayer's claim ... is of no consequence' to whether the prohibition against tax injunctions applies.... even though the Anti–Injunction Act's prohibitions impose upon the wronged taxpayer requirements at least as onerous as those mandated by the refund scheme[.]" United States v. Clintwood Elkhorn Min. Co., 553 U.S. 1, 10, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008) (citing Alexander v. "Americans United" Inc., 416 U.S. 752, 759, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974)); see also We the People Found., Inc. v. United States, 485 F.3d 140, 145 (D.C. Cir. 2007) (affirming dismissal of suit for injunction where plaintiffs alleged that the IRS had violated their First Amendment rights in seeking to collect unpaid taxes).

While the Supreme Court has expressly declined to decide whether the Anti–Injunction Act applies in the context of refund suits[3] and the Eleventh Circuit has

---

**2.** There are a number of statutory exceptions, as well as a judicial exception, but none apply in this case.

**3.** See Bob Jones University v. Simon, 416 U.S. 725, 748 n.22, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974)

not addressed the issue,[4] the Tenth Circuit has considered that question and held that the Anti–Injunction Act prohibits injunctions within the context of refund suits unless the judicial exception to the Act would apply. Marvel v. United States, 548 F.2d 295, 300 (10th Cir. 1977), cert. denied, 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977); see also, White v. I.R.S., 1977 WL 1309, at *2 (N.D. Ill. 1977) (Anti–Injunction Act's bar on injunctive relief is not altered by placing request for injunction within suit for refund). No judicial exception to the Act applies here.

 Plaintiff is likewise not entitled to a declaratory judgment. The requested tax deduction and refund were properly disallowed. Further, under the Declaratory Judgment Act, suits for declaratory relief in federal tax cases, aside from limited exceptions, are not permissible. See, e.g. Bob Jones Univ., 416 U.S. at 732 n.7, 94 S.Ct. 2038 (noting that the enactment of 28 U.S.C. § 2201 demonstrates "congressional antipathy for premature interference with the assessment or collection of any federal tax"); see also, Meyer v. Everson, 2006 WL 2583699, at *4 (M.D. Fla. 2006). None of the exceptions have any applicability here.[5] As with the injunctive relief requested, Plaintiff is not entitled to a declaratory judgment regarding the constitutionality of the IRS's decision to deny him a deduction for expenses he paid for medical treatment and procedures on individuals who are not covered by § 213.

ACCORDINGLY, it is **ORDERED AND ADJUDGED:**

4. Christian Coal. of Fla., Inc. v. United States, 2010 WL 3061800, at *5 (M.D. Fla. Aug. 3, 2010), aff'd sub nom., Christian Coal. of Florida, Inc. v. United States, 662 F.3d 1182 (11th Cir. 2011).

5. The Declaratory Judgment Act excepts from its prohibition "actions brought under section 7428 of the Internal Revenue Code of 1986." 28 U.S.C. § 2201(a). Section 7428 does not

Defendant United States of America's Motion for Summary Judgment (Dkt. 23) is **GRANTED** and Plaintiff Joseph P. Morrissey's Motion for Summary Judgment (Dkt. 19) is **DENIED.** The Clerk is directed to enter final judgment in favor of Defendant and against Plaintiff, to terminate any pending motions, and to close this case.

**DONE AND ORDERED** at Tampa, Florida, on December 22, 2016.

apply here because it addresses declaratory judgments relating to the status and classification of organizations under 26 U.S.C. § 501(c)(3). The Act also excepts from the prohibition certain proceedings under the bankruptcy code, and civil actions involving certain duties under the Tariff Act of 1930. Neither of those exceptions have any applicability here, either.